No. 16,156.

COAKLEY *v.* HAYES.
(215 P. [2d] 901)

Decided February 20, 1950.

Mr. O. OTTO MOORE, Mr. ARNOLD R. GILBERT, Mr. W. T. MOYERS, for plaintiff in error.

Mr. BENJAMIN C. HILLIARD, JR., for defendant in error.

*En Banc.*

MR. JUSTICE STONE delivered the opinion of the court.

DEFENDANT in error, defendant below, was a physician residing in Burlington, Colorado. Plaintiff in error was thrown from a horse, and employed defendant to diagnose and treat his resulting injuries. This action is predicated on alleged negligence of defendant in examination, diagnosis and failure of proper treatment of certain of such injuries. At the close of the evidence, the court instructed the jury to return a verdict in favor of defendant, and the matter comes here solely on the question of the sufficiency of the evidence to justify that instruction.

After his injury, plaintiff was taken to defendant's office. Defendant had him hospitalized, ascertained that he had suffered a fracture of the left clavicle, employed a figure-eight bandage, and a good union resulted from the treatment. Plaintiff testified that he suffered much pain in his neck, back and left hand, as well as in his shoulder, and repeatedly so advised defendant. Upon release from the hospital plaintiff went to Brush to watch some horse races and while there he consulted a chiropractor who advised him to go to Denver and have X rays taken, but he did not follow that advice; instead he went to Yuma with the race horses. Afterwards he went to Denver for the purpose of seeing a specialist, but the one sought was not available, so he merely had his arm dressed and returned home. Some time later he consulted a physician at Goodland, Kansas, who advised him to have X rays taken, but he did not follow that advice. Still later, and some six months after his accident, he consulted another physician at Burlington who took him to Denver for examination by Dr. Hartshorn, an orthopedic surgeon. That surgeon testified at the trial that X rays which were taken indicated displacement of the fifth cervical vertebra,

together with decrease in thickness, and calcification of the sixth, which probably was the result of its fracture several months before. He testified further that he found wasting and shrinking of the left arm, the muscles of which were smaller and weaker than those of the right arm; weakness in the grip of the left hand and some limitation in motion of the left shoulder. As a result of these findings, plaintiff was hospitalized for application of traction to keep the neck still and relax the muscles and tissues in an attempt to adjust the malalignment, although he testified that that result was not expected "to happen after a period of time." He further testified that burning sensation down the hand would be a normal consequence of a dislocated fifth or sixth vertebra; that wasting of the muscular tissue of the arm would be expected, and that the degree would depend on the amount of injury to the nerve root and the seriousness of the original injury. Assuming the accident of plaintiff's being thrown from a horse, it was the opinion of the surgeon that it caused a fracture of the sixth cervical vertebra and an injury to the fifth and sixth left cervical nerve roots, and that such injury resulted in the weakness and wasting of the left arm. He further testified that plaintiff's condition probably was permanent and would very likely constitute a fifty per cent disability as regard to the left arm; that, "The treatment is somewhat less likely to be effective if delayed one month or six months," and that "No one could say that he would have had a good result had proper treatment been instituted immediately. It is possible that there was sufficient damage to these nerve roots which occurred at the instant of the injury—assuming that there was an injury—so that no matter what treatment was instituted that damage was irreparable," that it was impossible to tell definitely whether a treatment would have been effective had it been "effected immediately."

Plaintiff also called as witness a specialist in neu-

rology who had examined him, and who testified that plaintiff suffered loss of muscular strength of the left hand and atrophy of the left arm and shoulder; that he could not say that the condition could have been caused by lack of treatment; but that, "It could be due to the injury itself. I don't know whether the injury itself affected those nerves so much that no treatment would have made any difference. Treatment may have made a difference and may not have. The injury itself may have caused such an injury that treatment would have been of no avail." He further testified in substance, that the possibility of recovery depended on how much injury had been done to the nerve roots; that if such injury was so serious that regeneration was impossible, then all treatment wouldn't cure it and that might have been the case with plaintiff; and, finally, that, "I made a statement in my report to Dr. Hartshorn that I had a feeling that the damage was done at the time of the injury. I said that I felt then irreversible changes had taken place * * * most likely due to the seriousness of the injury at the time.

 ■ ■  It is elementary that the burden of proof of negligence rests upon him who asserts it; such burden cannot rest on surmise or speculation or conjecture, but must be grounded on substantial evidence, on evidence sufficient to warrant a reasonable belief in the existence of facts which would support a finding of negligence. Where the evidence presents no more than an equal choice of probabilities, it is not substantial. *Polz v. Donnelly*, 121 Colo. 95, 213 P. (2d) 385. Plaintiff's evidence, considered in the most favorable light, seems to go no further than that, and the trial judge properly so concluded.

 ■ ■  It is urged in behalf of plaintiff that his present condition is probably permanent; that prior to proper diagnosis and treatment, it grew slowly but progressively worse; that such proper treatment, even at the late date, arrested the wasting of the arm and re-

lieved the pain, and therefore proper treatment immediately after the injury would have prevented the subsequently developed disability. Unfortunately for plaintiff, he does not point out, and we are unable to find, any evidence to support his conclusion, and, reasonable as the conjecture may sound, in the absence of positive testimony we may not indulge in the speculation.

The judgment is affirmed.

MR. JUSTICE HAYS dissents.

MR. CHIEF JUSTICE HILLIARD and MR. JUSTICE MOORE do not participate.