## No. 16,662.

MALONEY *v.* JUSSEL ET AL.
(241 P. [2d] 862)

Decided February 11, 1952. Rehearing denied March 3, 1952.

Mr. HOWARD ROEPNACK, Mr. ROBERT J. SULLIVAN, for plaintiff in error.

Messrs. JANUARY & YEGGE, MARGARET R. BATES, for defendant in error Jussel.

Messrs. WOLVINGTON & WORMWOOD, for defendant in error Pister.

*En Banc.*

MR. JUSTICE CLARK delivered the opinion of the court.

MALONEY brought action against Jussel and Pister jointly to recover damages for personal injury, which he alleges resulted from the negligent operation by defendants of their respective automobiles. From a judgment

of dismissal of his complaint, following a verdict of the jury in favor of defendants, plaintiff comes here by writ of error.

Two separate collisions occurred, the first at approximately 11:00 o'clock p. m. on the 8th day of January, 1948, and the second about five minutes later, on West 46th Avenue, about midway in the block between Julian and Irving Streets, City and County of Denver. It was a disagreeable, stormy evening, with a mixture of fog and mist commingled at times with sleet and sometimes with a fine snow. Visibility was poor. The streets were wet, generally slippery, and in spots icy, due to the freezing of the moisture on the pavement.

Prior to the chain of events hereinafter related, one Karhe, calling upon his friend Moreau, had parked his Buick automobile near the curb on the south side of West 46th Avenue, and entered the home of Mr. Moreau. Defendant Jussel driving a Hudson automobile, accompanied by Marjorie Dearing, who occupied the right side of the front seat, and another young couple—James Liley and Elizabeth Route in the back seat—was proceeding easterly on the south side of West 46th Avenue. At or about the time first above mentioned he crashed the Hudson into the left rear end of the Buick car belonging to Mr. Karhe. As a result of this collision the Buick was driven up over the curb onto the parking, and the Hudson came to rest at an angle with its right front wheel either at or near the curb and the rear end toward the middle of the street, its exact position being somewhat differently described by respective witnesses. As a further result of this collision the front end of the Hudson was considerably damaged, the steering wheel was broken and pushed down over the post, and the car was otherwise rendered immobile. Also, the horn on the Jussel Hudson began to sound at full blast and would not be released by use of the horn button. By the sudden stop due to the impact, Miss Dearing was thrown from the front seat onto the floor of the car. Fearing

that she might be seriously injured, Jussel and Liley cautioned her to remain in her then position until help could be procured. The two boys, at Miss Dearing's request, devoted their entire attention in trying to stop the horn from blowing.

At the sound of the crash, several people left their homes and came out on the sidewalk or curb. The plaintiff went at once to the right front door of the Hudson car and there engaged in conversation with Miss Dearing. He contends that Miss Dearing at that time was hysterical and that he was trying to console and quiet her until an ambulance should arrive so that she might be moved. There is conflict in the evidence at this point. Miss Dearing insists that, while she was apprehensive of possible injury, she was not hysterical and had no intention other than to remain quiet until capable hands should release her from her awkward position. Several witnesses testified concerning Miss Dearing's position and condition; some stated that she evidenced distress, but all, with the exception of plaintiff and one other, agree that she was not hysterical. Except for the plaintiff and the girl in the back seat, no one devoted any particular attention to Miss Dearing, but several were engaged in efforts to stop the noise from the horn.

At this moment, in the sequence of events, came defendant Pister, also driving easterly on West 46th Avenue, in a 1939 Chevrolet, which collided with the Hudson, the point of impact being the Hudson's right front door, which was then open. Plaintiff, then standing on the street at the right front door of the Hudson with his head inside of the car talking to Miss Dearing was struck by the Chevrolet across the calves of his legs, resulting in his injury. At the time of this second collision the horn on the Hudson car was still sounding, certainly one head light and one tail light, probably both, were burning; the inside of the car was lighted by the dome light; and the small light that illuminates the floor near the front door when the door is opened was shining.

Except as hereinabove indicated the foregoing facts are practically undisputed. There is, however, a considerable variance in the testimony with respect to driving conditions and the limitation of visibility due to ice forming upon the windshields. Some witnesses testified that the ice formed upon windshields on their cars so rapidly that it was necessary to stop every two or three blocks and clean them. All of the people riding in the Hudson car testified that the portion of the windshield served by the wipers was at all times clear, but admitted that other portions, not reached by the wipers, were coated with ice and snow. Pister had driven some fourteen blocks without cleaning his windshield, but declared that he was having no particular difficulty in observing where he was going, and that he had not noticed that the pavement was particularly treacherous or slippery. He declared, however, that he had not seen the Hudson car until he was approximately thirty feet from it, and that when he applied his brakes in an effort to stop, his car skidded to the right, thus causing the collision. That the Pister car went into a skid to the right seems to be borne out by the testimony of other witnesses. All admit that Pister was driving at a moderate or rather slow rate of speed.

On the part of plaintiff, it is contended that his injuries resulted directly and proximately from the concurrent negligence of both defendants, and that notwithstanding the lapse of approximately five minutes in time between the two collisions, the second was the natural result of and could not have occurred except through the first.

Defendant Jussel, while admitting negligence in striking the Buick car at the curb, contends that the situation resulting therefrom in no way or manner contributed to, or was the proximate cause of, the injury of which plaintiff complains, and that the same was due wholly and entirely to the negligence of defendant Pister. Pister on the other hand denies that he was negligent. Both de-

fendants insist that plaintiff would have escaped injury entirely had he used due and reasonable precaution for his own safety.

In his specifications of points, plaintiff sets forth eleven items wherein it is alleged that the trial court committed error. These in a general way may be considered under three headings: (1) Failure of the trial court to give plaintiff's tendered instructions designated as numbers 1 and 2; (2) error in the giving of seven instructions which plaintiff contends are improper and misleading; and (3) that the verdict is against the great weight of the evidence.

For various reasons, no error occurred in the refusal of the trial court to give plaintiff's tendered instruction No. 1. Within the language of the tendered instruction are contained and commingled together at least two separate subjects, and it also is argumentative in form. Primarily, however, no error resulted on account of its refusal for the reason that the matters referred to therein were fully covered by instructions given; reference being had particularly to instructions 6 and 13A.

Given instruction No. 19 is a proper and quite generally used form of instruction in cases of this nature, and since it accurately covers the situation developed in the instant case, the trial court did not err in refusing to give plaintiff's tendered instruction 2.

We now come to the second group of specified errors which pertain to instructions given. At the outset, from our study of this record, it is clearly evident that counsel for all parties concerned appear to have been much more enthusiastic in the support of their respective causes than in aiding the court in the preparation and selection of completely proper and accurate instructions to be given to the jury. This impression is strongly supported by the fact that, aside from the general stock instructions, practically every instruction proposed or tendered by plaintiff was objected to by one or the other of coun-

sel for defendants, and that every instruction tendered on behalf of defendants' counsel was, in turn, objected to by counsel for plaintiff. When such a situation prevails during the course of trial, it is readily understandable the difficulty with which the trial judge is confronted, in the short period of time available to him in the preparation of instructions, to select and give those only which are technically accurate and wholly comprehensible. Likewise, it is readily apparent that the labors of this court are multiplied when such a record reaches us upon review.

Instruction No. 13 relates to "proximate cause." It is not within itself entirely complete. The portion of the instruction necessary ( ) be discussed reads as follows: "You are instructed that he proximate cause of an injury as the term is used in these instructions is a cause which in its natural and continuous sequence, *unbroken by any new cause * * *."* (Emphasis supplied.) The italicized portion, as usually given, would have read "unbroken by any new, efficient intervening cause." Now the question is whether or not by the omission of the words "efficient intervening," the instruction, in the light of all of the instructions given, is so inadequate or defective, that by reason of this omission the jury might in any manner have been misled. The term "proximate cause," or some variation thereof, is used in other instructions. It is important that the jury be advised as to what is meant by proximate cause. Can it be said upon considering all of these instructions together that the jury possibly could have been misled by the omission of the two words? We believe not. While usual, they have no mystic charm. Granting that properly they should have been incorporated in this instruction, they are required by neither statute nor ritual. The meaning of "proximate cause" is made clear in instruction 13 itself. If from this and other instructions given its meaning is made clear, the omission of the two words is not vital. Instruction No. 6, and other instructions

given, supply the omission of which complaint is made. In Instruction 13A we find the following language: "It is of course essential to a recovery against the first wrongdoer that it be established by the evidence that there was a causal connection between his negligent conduct and the final resulting injury." "Causal connection" is the essential element of proximate cause, and for all practical purposes synonymous with it. In cases of this nature, and in this case in particular, the whole point involved depends upon a correct solution of cause and effect, "causal connections," "proximate cause." The trial court gave the usual instruction that all "instructions must be taken, considered and read together, as they are connected and related to each other as a whole." It is inconceivable to us that the jury could possibly have been misled as to what constitutes "proximate cause."

■■ It is contended that no instruction should have been given upon "unavoidable accident" or "atmospheric conditions," covered by instructions No. 14 and No. 15. Both instructions are in proper form, hence the question is whether or not any instruction on these issues should properly have been given. On these instructions, as well as others to which objection is made, it is urged that inconsistencies exist between instructions given. Each party to a cause on trial has the right to submit, and the court is under obligation to give, proper instructions in support of the theory of the respective parties, providing there is evidence in the record upon which to base each instruction. A thorough study of this record convinces us that there is evidence on behalf of defendants which requires the giving of these instructions. One might be inclined to suspect the complete accuracy of this last statement if viewed alone from the standpoint of the defendant Pister, but certainly there can be no justification for the refusal of said instructions when tendered on behalf of defendant Jussel. Since plaintiff chose to charge and try the two defendants jointly, he may not now insist upon the exclusion of instructions necessary

on behalf of one for the reason that they may be questionable upon behalf of the other.

The court instructed the jury both on assumption of risk (No. 16) and contributory negligence (No. 21), both of which instructions, it is contended on behalf of plaintiff, were uncalled for and should not have been given. Certainly under the defendant's theory of the case, there was ample reason to instruct upon the question of contributory negligence and there is evidence to support a verdict based thereon if the jury should so find. The same is likewise true with respect to assumption of risk, which is but another form of contributory negligence. When the risk is voluntarily taken, it is said to be assumed; when through inadvertence, it is said to be casual. *Wilson v. Hill,* 103 Colo. 409, 413, 86 P. (2d) 1084.

It also is contended on behalf of plaintiff that the negligence of defendant Jussel contributed to plaintiff's injury for the reason that had it not been for the first collision between Jussel's car and the automobile parked at the curb, there would have been no occasion for the occurence of the second collision. It further is contended that plaintiff at the time of the second collision was engaged in an effort to aid and assist the young lady presumably injured in the first collision, and that he should not be held guilty of contributory negligence while pursuing such salutory task. It is true that under certain circumstances where conditions warrant, one may not be held accountable to such strict observance of prudence and care as otherwise might be the case. That the jury might properly be guided with respect to this principle of law, the court gave instruction No. 12, which is as follows: "You are instructed that it is not necessarily contributory negligence to expose oneself to danger in a reasonable effort to save a third person from harm. The test is whether in all the circumstances the acts or omissions of such a person were

or were not such as a reasonably prudent person would have indulged in at the time."

The court also gave another instruction, No. 19½, in which the jury was told that at the time of his injury, plaintiff "was not engaged in rescuing a person from a threatening imminent peril and the plaintiff was required to use reasonable care for his safety." Objection to this latter instruction was made on behalf of plaintiff before it was given, and now appears as his 9th specification of points. It is contended that instructions No. 12 and 19½ are in direct conflict. With this contention we cannot agree for the reason that under the facts and all surrounding conditions and circumstances involved in this case, by instruction No. 12 the court conceded to the plaintiff everything to which he was entitled pertaining to the rule involved. Under that instruction the jurors were at liberty to determine whether, under the circumstances and from the evidence, plaintiff was engaged in saving a third person from harm, or rendering material, necessary assistance in that respect. It became a jury question. A careful consideration of all the evidence leads certainly to the definite conclusion that there was at that time no "threatening imminent peril," and therefore plaintiff could not have been engaged in the rescuing of anyone from something that did not exist. It is not a case where one impulsively dashes in front of a swiftly moving vehicle to rescue a child from its path, or plunges into a raging stream to save a drowning victim of the flood. The two instructions taken together simply advise the jury that such care is required as is commensurate with the then existing situation. The court committed no error by giving instruction No. 19½.

In the last analysis all of these matters which we have been discussing resolve themselves into the primary issue of proximate cause, and all were questions for the jury to determine. The effect is evident—plaintiff was injured—but before defendants or either of them may be held answerable to him in damages on account

of his injuries, it must be established by a preponderance of the evidence that such was the result of, or was directly or proximately caused by, the negligence of one or both of defendants. In this case the difficulty is more involved perhaps than in the usual situation where but one collision occurs. It is even more involved than where injury resulted from the simultaneous collision of three or more automobiles, or where events happen so rapidly that there is no material time lapse between the first and second collision. In the case at bar approximately five minutes intervened between the first and second collisions. Under certain circumstances, the lapse of five minutes could not be said, in and of itself, sufficient to establish that the acts were not concurrent. Under other circumstances the time limit would make the two collisions completely separate and distinct. See, *Goede v. Rondorf,* 231 Minn. 322, 43 N.W. (2d) 770. In any event, this case was submitted to the jury, and it was for it to determine the extent, if any, to which each of the collisions contributed to plaintiff's injury. If both contributed, both defendants are liable; if but one contributed, he alone is responsible. Here the jury found that plaintiff's injury did not result proximately from negligence on the part of defendants, or of either of them.

Many decisions and authorities might be cited in support of the statement that all the issues here involved are ordinarily for the jury's determination. We mention only a few. On proximate cause: *Denver & Rio Grande Railroad Co. v. Sipes,* 26 Colo. 17, 23, 55 Pac. 1093; *Clark v. Wallace,* 51 Colo. 437, 439, 118 Pac. 973; *Dillon v. Sterling Rendering Works,* 106 Colo. 407, 411, 106 P. (2d) 358; *Wallace v. Jones,* 168 Va. 38, 190 S.E. 82. On negligence and contributory negligence: *Dillon v. Sterling Rendering Works, supra; McCarthy v. Eddings,* 109 Colo. 526, 127 P. (2d) 883; *Wilson v. Hill, supra; Murphy v. Hawthorne,* 117 Ore. 319, 244 Pac. 79; *Valles v. Union Pacific R. Co.* (Idaho 1951), 238 Pac.

(2d) 1154, 1159; *American Products Co. v. Villwock*, 7 Wash. (2d) 246, 109 P. (2d) 570, 576; *Hedgecock v. Orlosky*, 220 Ind. 390, 44 N.E. (2d) 93. For general statement see, 5 American Jurisprudence, p. 886, §703; also, generally, on issues involving slippery road, see, 5 American Jurisprudence, p. 884, §698, and atmospheric conditions, id. p. 885, §699.

 It is fundamental that the mere happening of an accident does not raise any presumption of negligence. Neither is proof of negligence alone sufficient, but it must also be further established that the negligent acts of defendant were the proximate cause of the resultant injury. Determination of this question also is the province of the jury in the usual case. Some of the cases above cited so hold. In other instances, particularly involving double collisions, and depending upon the facts and circumstances, it has been held as a matter of law that the driver of the car whose negligence caused the first crash cannot be held responsible for the second. See: *McClure v. Richard*, 225 Iowa 949, 282 N.W. 312; *Chatterton v. Pocatello Post*, 70 Idaho 480, 223 P. (2d) 389. We mention this only to illustrate the difficulty of this issue in the case at bar. While some of the instructions considered independently and alone may be said to be subject to criticisms, yet when taken and considered as a whole we are convinced that the jury was properly and adequately advised and that no prejudice resulted to plaintiff on account thereof.

 On the specification that the verdict of the jury was contrary to the evidence, little additional need be said. We have so many times declared that where the evidence is in conflict and is such that the minds of reasonable men might not be in agreement, or draw different inferences therefrom, it is the peculiar province of the jury to make determination of the facts. No citation is necessary. Neither is it necessary to cite authority to the effect that every presumption favors the correctness of the verdict, and that the conclusions and findings

of the jury, as the trier of facts, will not be disturbed on review in the absence of a clear showing of passion or prejudice.

In view of the foregoing, other specified points of alleged error need not be discussed.

The judgment of the trial court is affirmed.

MR. JUSTICE HOLLAND not participating.