No. 20725.

Harrison Blackburn, individually and d/b/a
Erhard Hotel *v.* Myree D. Tombling.
(407 P.2d 337)

Decided November 1, 1965.     Rehearing denied November 22, 1965.

McComb, Zarlengo, & Mott, for plaintiff in error.

Wood, Ris & Hames, James E. Elliott, Jr., for defendant in error.

*En Banc.*

Mr. Justice Day delivered the opinion of the Court.

We will refer to the parties by name.

This is the second time this action is before us on writ of error. Upon the first consideration we held that certain evidence was improperly and erroneously admitted in the trial which conceivably might have influenced the jury in determining the question of liability against Blackburn. *Blackburn v. Tombling,* 148 Colo. 161, 365 P.2d 243.

The judgment which was at that time entered against Blackburn on a jury verdict awarding Tombling $5000 damages was reversed and the cause remanded for a new trial. On the second trial the jury verdict also was in favor of Tombling in the amount of $3000, and to the judgment entered thereon against him Blackburn again brings writ of error to this court.

Tombling instituted suit against Blackburn alleging that on the day in question, while at the Erhard Hotel, which was leased and managed by Blackburn, she suffered injuries which were proximately caused by the negligent manner in which Blackburn maintained the

entryway to the hotel premises. Blackburn, by answer, admitted that he managed and operated the hotel, but denied all allegations as to his negligence and asserted affirmatively defenses among which was that of contributory negligence. The trial to the jury each time was on issues of Blackburn's negligence and Tombling's contributory negligence.

Pertinent evidence adduced at both trials may be summarized as follows: On the date of the accident Tombling entered the hotel for the first time. In so doing she stepped from the sidewalk onto a raised cement step, pulled open the right hand door, which she said "drug a little," passed through a vestibule, through inner open "swinging" doors leading into the main lobby, and stepped up to the registration desk. There she inquired of the desk clerk for Blackburn, who was expecting her and with whom she had an appointment. She then waited in the lobby for about ten or fifteen minutes. In addition to meeting Blackburn and his wife, she was also to meet a third person. Some time prior to the Blackburn's descent from their second floor apartment to keep the appointment, Tombling decided to go outside to look for the other member of the party. She passed through the vestibule, pushed the outside door open with her left hand, and fell, sustaining the injuries of which she complains.

From the sidewalk level to the lobby level is an approximate four and a half inch step-up extending the entire width of the entryway of approximately sixteen inches. This step is flush with the outside walls of the building. Set back of the inner side of an arched doorway are two doors which swing out over the step, each with handles on the outside. The doors were not of the "swinging" variety, and after being opened were closed by compression. The left hand door as one enters the hotel has been permanently locked for years. Upon entering the hotel one pulls open the right hand door; on leaving the premises one pushes the door open, there

being a brass plate at the height where pressure would usually be applied to open such a door. There is no handle or "push-bar" on the inside door. Each of the two outer doors consists of a large glass panel inserted in a door frame, leaving a wooden panel about six inches wide at the top and sides and a slightly larger panel at the bottom. The bottom panel has superimposed on it, both inside and outside, a brass plate, approximately eight inches wide.

■ Plaintiff attributed her fall to not being able to see the step down, maintaining that her view thereof was obstructed by the lower panel of the door. Additionally, she testified the mishap occurred at dusk and that the vestibule lights had not been turned on, further contributing to her inability to see the difference in elevation as she went out. The door, she said, did drag somewhat. There was no handle fixed on the inside of the door to secure one's balance on going out. There is a sign on the locked door, reading "Use Other Door." There is no sign such as "Step Down" or other warning of the step ahead. From photographs admitted as exhibits and testified to depicting the conditions as one sees them, there is additional support to the testimony given concerning the physical characteristics of the hotel entrance. These photographs, plus the oral testimony, are sufficient to support a finding by the jury that one fully exercising due care leaving the hotel could fail to observe the difference between the hotel and street levels. See *Peters v. Schillig-Scott Lumber Co.*, 107 Colo. 310, 111 P.2d 898.

In the first trial, in addition to the above, there was introduced into evidence the *opinion* of an architect that the steps involved created a dangerous condition. Evidence was also introduced of isolated and disconnected incidents wherein persons had stumbled over the steps in question. We held that the admission of the expert opinion which, it was asserted, was the very issue the jury was called upon to determine, and the recital of

the other isolated and disconnected falls, constituted error and warranted reversal. *Blackburn v. Tombling, supra.* However, in addition to the two grounds expressly ruled upon, other assignments of error were presented in the first writ of error which are reasserted herein and summarized as follows: 1. that the evidence did not establish any negligence on the part of Blackburn, and that the court should have directed a verdict in his favor as a matter of law; and 2. that Tombling was guilty of contributory negligence as a matter of law.

In the opinion reversing the case, expressly on two assignments of error, there was no direct comment by the court and no express holding on the question of the sufficiency of the evidence to charge Blackburn with negligence nor did we express any opinion as to whether Tombling's conduct constituted contributory negligence as a matter of law. But from the very fact that we were silent on the other assignments it was implicit in our determination and our remand for a new trial that the evidence — absent matters erroneously admitted — supported a claim of negligence sufficient to constitute questions for the jury. Had we held a contrary view at that time, we would have been compelled, willy-nilly, to remand the action to the trial court for dismissal and not for a new trial on the same evidence. If the evidence was sufficient then to warrant a new trial, with the erroneous matters to be excluded, it is sufficient now to sustain the second verdict.

On a second review, where we have already considered the sufficiency of the evidence in a former appeal, we will normally adhere to our former determination. A decision already made as to the sufficiency of evidence to warrant submission of questions of negligence or contributory negligence to a jury is conclusive on a second writ of error where substantially the same evidence is introduced and upon which the same arguments have been previously presented to the court. We have so held in at least two cases. *Farmers Co. v. Fulton*

*Co.*, 81 Colo. 69, 255 Pac. 449; *Smith v. Windsor R. & C. Co.*, 88 Colo. 422, 298 Pac. 646. It is true in those two cases that questions presented on subsequent writs of error were directly ruled upon and commented upon in the first opinion, but the law is no different where the same matters have been argued, although not directly ruled upon.

"Questions necessarily involved in the decision on a former appeal will be regarded as the law of the case on a subsequent appeal, although the questions are not expressly treated in the opinion of the court, as the presumption is that all the facts in the case bearing on the points decided have received due consideration whether all or none of them are mentioned in the opinion." 5B C.J.S. Appeal and Error § 1832.

One other matter on the status of Tombling deserves brief comment. Blackburn has advanced the argument in both writs of error that Tombling was not an invitee but a mere licensee or social guest when she visited the premises. In both trials, an instruction was given to the jury stating that the duty owed to Tombling was one of reasonable care. The giving of the instruction has not been *directly* assigned as error in Blackburn's briefs on writ of error, either in this case or when the matter was first before us, although Blackburn did object to the instruction given on the issue at each trial and in both did tender an instruction more favorable to him thereon. Suffice it to say that even if the question as to the propriety of this instruction had been properly raised here, the evidence in the record would support the conclusion that Tombling was an invitee and that the duty of care owed to her was correctly submitted to the jury.

The judgment is affirmed.

Mr. Justice Sutton concurs in the result.

Mr. Justice Schauer dissents.

Mr. Chief Justice Pringle and Mr. Justice McWilliams not participating.

Mr. Justice Schauer dissenting.

I dissent.

Mr. Justice Day in the majority opinion has sufficiently recited the pertinent facts for the purposes here to be served, with the exception that I would place special significance upon the fact that Tombling had just traversed the entrance of the building and was thus familiar with the premises at the time of her exit. Also that the record is replete with evidence that the light was adequate to see all structural details involved. Additional pertinent facts are revealed in the testimony, which appears as follows:

"Q   The cause of your fall, then, was that you missed the step then, is that right?

"A   * * * well, I suppose it would be.

 *     *     *

"Q   * * * what caused you to start to fall?

"A   Well, I suppose missing the step * * *.

 *     *     *

"Q   You just forgot the step was there when you went back out, didn't you?

"A   I don't know whether to say I forgot it was there or whether I just didn't see it or what."

There is also testimony as follows:

"Q   The reason you fell then, was that you just didn't see that step, isn't that true?

"A   No sir. The reason I fell is because the vestibule was not lighted —."

The evidence in the record does not support her claim that the fact that the droplight in the vestibule was not on, or that it was so dark she could not see where she was going, contributed to this accident. During the half hour between 6:30 and 7:00 P.M., all of the events referred to took place. The sun did not set on this Spring

afternoon until 6:38 P.M. The hotel faced the west and the rays of the setting sun were streaming into the vestibule through the front glass doors at least up to that hour, and the afterglow must have furnished sufficient light for sometime thereafter. The street lights were being turned on and a light was on in the lobby. Plaintiff admitted that she could have seen the checkers on the floor of the vestibule had she looked down; that she saw the sign "USE OTHER DOOR" on the inner surface of the outside door to her right, and also the brass plate at the bottom of the outside door on her left. Moreover, she had testified in a deposition that the only thing she would have different about the door was the presence of a handle. According to her own testimony and admissions, neither the absence of light nor the condition of the outside door was the cause of her fall.

The only question posed by plaintiff's complaint or testimony is whether the maintenance of the combination of door, threshold and step constituted negligence on the part of the defendant, who had the duty of ordinary care but was not an insurer of the safety of the plaintiff.

This question has been considered in cases cited in the briefs of plaintiff in error. In the case of *Drake v. Lerner Shops of Colorado, Inc.,* 145 Colo. 1, 357 P.2d 624, plaintiff blamed a similar fall on a five-inch step outside the door of the defendant's store as the proximate cause of injuries sustained. At the close of the plaintiff's case, the trial court granted a motion for dismissal, which action this court affirmed.

In *Garner v. Atlantic Greyhound Corporation,* 250 N.C. 151, 108 S.E.2d 461, plaintiff fell from a concrete sidewalk with a six-inch perpendicular drop-off at one end of the entryway of defendant's store. In that case, as here, there were no handrails or warning signs and the conditions were aggravated by the fact that the surface was slippery and uneven. The Supreme Court of North Carolina held that the defendant's motion for

nonsuit should have been granted, and reversed the judgment of the trial court, finding that such a defect did not constitute negligence on the part of the store owner, nor did his failure to give warning constitute negligence. The court cited many cases holding that the mere difference in levels does not constitute negligence, stating:

"* * * the mere fact that * * * there was a drop-off of varying height at the sidewalk did not constitute negligence."

The court also cited cases holding that a defendant has no duty to warn the plaintiff of a dangerous condition provided such a condition is *obvious*. In the instant case, even had the existence of the step been dangerous, there was no duty on the defendant to warn the plaintiff to that effect; it was obvious, and plaintiff had negotiated the step only a few moments before her fall. All the plaintiff had to do was to step down one step, which was obvious and of which she had knowledge, and she cannot now successfully contend that the mere existence of this step constituted negligence on the part of the defendant.

It was the burden of the plaintiff herein to establish by a preponderance of the evidence that the defendant was negligent and that his negligence proximately caused the injuries which plaintiff suffered. The language and the citations therein, from the opinion in *Grand Junction v. Lashmett,* 126 Colo. 256, 247 P.2d 909, are most appropriate in this case. There the court said:

"At the outset it is well to recall that negligence is never presumed, but must be proven by a preponderance of the evidence. Proof of the happening of an accident or the occurrence of an injury alone raises no inference of negligence. *Home Public Market v. Newrock,* 111 Colo. 428, 432, 142 P. (2d) 272; *Saliman v. Silk,* 118 Colo. 220, 222, 194 P. (2d) 304. 'It is fundamental that the mere happening of an accident does not raise

any presumption of negligence.' *Maloney v. Jussel,* 125 Colo. 125, 241 P. (2d) 862, 867."

In the same case, this court also stated:

"\* \* \* Where, however, as here, the evidence is not in conflict and there is no dispute as to the facts of the case, the issue on the question of negligence is resolved into one of law for determination by the court. \* \* \*."

In *Gordon v. Clotsworthy,* 127 Colo. 377, 257 P.2d 410, it is stated:

"\* \* \* To be liable, the defendant in this case must be shown to have been negligent in some act or omission which proximately caused plaintiff's injury. The burden of proof of negligence rests upon the party who asserts it, and such burden cannot rest on surmise, speculation or conjecture, but must be grounded on substantial evidence. *Coakley v. Hayes,* 121 Colo. 303, 306, 215 P. (2d) 901."

As I understand the majority opinion, it is also addressed to the "law of the case" as announced in the previous opinion of this court appearing in *Blackburn v. Tombling,* 148 Colo. 161, 365 P.2d 243. The language used in this regard is most significant in that it expressly states that, "there was no direct comment by the court and no express holding on the question of the sufficiency of the evidence to charge Blackburn with negligence nor did we express any opinion as to whether Tombling's conduct constituted contributory negligence as a matter of law."

I submit that an examination of authority reveals some general statements to support the view of the majority opinion. My study of the cases on this point, however, leads me to a contrary conclusion. In the interest of brevity, and such is a legitimate limitation of the license of a dissenter, I submit the controlling law to be, simply stated, as follows: The first opinion becomes the law of the case *only if and when* the court decided the *propositions* presented. In the instant case the first opinion is silent on the principal issue now

before the court, namely, proof of negligence on the part of Black'burn under the circumstances here presented. In fact, the first opinion, at page 162, stated:

"* * * We deem it necessary to consider only two points upon which we ground a reversal of the judgment."

This was a most proper and succinct method of disposition of the case.

The issue of "the law of the case" has been dealt with on numerous occasions and I deem it appropriate to make reference to some of the authority.

In *Nathanson v. Murphy,* 147 Cal. App.2d 462, 305 P.2d 710, the court said:

"The doctrine of the law of the case is that where on appeal the court, 'in deciding the appeal, *states in its opinion a principle or rule of law necessary to the decision,* that principle or rule becomes the law of the case and must be adhered to throughout its subsequent progress, both in the lower court and upon subsequent appeal.' Tally v. Ganahl, 151 Cal. 418, 421, 90 P. 1049, 1050. * * *." (Emphasis supplied.)

In *Allen v. Cal. Mutual B. & L. Ass'n.,* 22 Cal.2d 474, 139 P.2d 321, the court stated:

"It is a rule of general application that all questions and issues adjudicated on a prior appeal are the law of the case upon all subsequent appeals and will not be reconsidered. * * *."

I also quote from 5 Am. Jur.2d Appeal and Error, § 746, as follows:

"The doctrine extends only to legal issues decided on the former appeal. * * *."

Where on former appeal one party presented two propositions in support of the judgment, and decision on the first required reversal, but the court decided both, its judgment as to the second was not obiter dicta, but res judicata on second appeal. *Harvey v. Rogers,* 174 Ky. 176, 191 S.W. 894.

I note with special interest the acknowledgment in the majority opinion that the two Colorado cases cited therein were concerned with questions that had been directly and expressly ruled upon in the first opinion. In fact, in the one case the second opinion quoted the language of the first opinion in making reference thereto. Thus, it is my understanding of the cases cited that they are not applicable to the issue now before the court.

I am deeply concerned for the cause of litigants finding themselves in the position of the plaintiff in error in this case. It appears to me that he had absolutely no warning or suggestion that he was not entitled to a full retrial and appeal under the uusual rules applicable to his case. This concern takes on meaning of special magnitude when the question as to "the law of the case" is not even raised by the defendant in error.

In the first Blackburn case, *supra*, the court specifically limited its consideration to the two assignments of error relative to procedural matters. The law of the case, as related to these two errors, was established by the first case. It was not established as to the negligence of either party, or any facts developed at the second trial, by any finding from which the opinion of this court might be inferred as to such negligence or other evidence.