**Mary SHORT, Plaintiff-Appellant,**

v.

**J.H. KINKADE, D.D.S., and D.J. Kinkade, D.D.S., Defendants-Appellees.**

**No. 82CA0791.**

Colorado Court of Appeals,
Div. III.

Dec. 22, 1983.

Rehearing Denied Jan. 26, 1984.

Certiorari Denied July 9, 1984.

Hutchinson, Black, Hill, Buchanan & Cook, William D. Meyer, Boulder, for plaintiff-appellant.

Pryor, Carney & Johnson, P.C., Irving G. Johnson, Englewood, for defendants-appellees.

TURSI, Judge.

In this dental malpractice action, plaintiff, Mary Short, appeals from the adverse jury verdict rendered in the trial court and the court's award of $4,504.10 in costs to

defendants, J.H. Kinkade, D.D.S. and D.J. Kinkade, D.D.S. We reverse.

Plaintiff contends that the trial court erred in rejecting her proposed instruction regarding the standard of care required of the defendants under the facts of this case. Her second contention is that the trial court improperly awarded costs to the defendants for expenses incurred by defendants' experts in preparation for trial.

Plaintiff became a patient of defendants in 1974. In 1979, one of the defendants, J.H. Kinkade, performed an occlusal equilibration on the plaintiff. Equilibration is a modification of the biting surfaces of the teeth to improve bite or occlusion. The goal of the procedure is to achieve centric relation, or harmonious occlusion. After six treatment sessions, centric relation was not achieved. The defendants determined that it was necessary for plaintiff to retain the services of a dentist with more experience in occlusal equilibration. Subsequent to the treatment received from the defendants, plaintiff underwent full mouth reconstruction at a cost in excess of $11,000, and she initiated this action against defendants.

At trial, plaintiff timely tendered an instruction setting forth the standard to be applied to a dentist with a specialty in a field of dentistry. The trial court rejected the proposed instruction and, instead, instructed the jury to apply the standard required of a general dental practitioner. Plaintiff contends that the record contains sufficient evidence to support instructing the jury on the standard of care of a specialist in the area in which the defendant claimed special expertise, and that the trial court committed prejudicial error in failing to so instruct the jury. We agree.

We find no cases in Colorado specifically dealing with the standard of care applicable to a practitioner holding himself out as possessing special knowledge and skill in a particular field of medicine or dentistry. However, authority on this issue is ample. *Restatement (Second) of Torts* § 299A states that a general standard of care is to be applied to a professional, "[u]nless he represents that he has greater or less skill or knowledge" than normally possessed by members of the profession. And, *Restatement (Second) of Torts* § 299A comment d states:

> "An actor undertaking to render services may represent that he has superior skill or knowledge, beyond that common to his profession or trade. In that event he incurs an obligation to the person to whom he makes such a representation, to have, and to exercise, the skill and knowledge which he represents himself to have. Thus a physician who holds himself out as a specialist in certain types of practice is required to have the skill and knowledge common to other specialists."

*See Atkins v. Clein*, 3 Wash.2d 168, 100 P.2d 1 (1940). Also, Prosser states that if a professional represents himself as having greater skills than the average member of the profession, the applicable standard of care is modified accordingly. *W. Prosser, Torts* § 32 (4th ed. 1971). *See Atkins v. Clein, supra. See also* McCoid, *The Care Required of Medical Practitioners*, 12 *Vand.L.Rev.* 549 (1959).

The defendants cite *Colo.J.I.* 15:5 (2d ed. 1980) for the proposition that in order for the specialist standard to be applicable, the professional must hold himself out as being a specialist, as opposed to a representation of greater skills or knowledge. This argument is unpersuasive in that this pattern jury instruction is intended as a model and will yield to prevailing law. C.R.C.P. 51.1. *See Federal Insurance Co. v. Public Service Co.*, 194 Colo. 107, 570 P.2d 239 (1977).

Neither *Prosser* nor the *Restatement* require a recognized specialty as a prerequisite to a specialty standard of care instruction. All that is necessary is the establishment of a heightened standard of care by way of expert testimony. *See Smith v. Curran*, 28 Colo.App. 358, 472 P.2d 769 (1970). In a case such as this, the standard, as adduced by expert testimony, will be consistent with the level of skill or expertise as represented by the practitioner. Thus, the gravaman of the action is

not negligent misrepresentation, but rather is breach of the heightened standard of care applicable where the defendants are practicing a form of dentistry which requires special knowledge and training.

Here, plaintiff first learned of the existence of equilibration treatment from the defendants. The defendants advised the plaintiff that occlusal equilibration would prove beneficial and that they were capable of administering the treatment based on a course in equilibration which they were attending. Plaintiff was preparing to move to Boulder and asked the defendants if there were any dentists in the Boulder area who could perform this procedure. The defendants stated that there were two dentists in Boulder who were also attending the course, but they could not recommend either of them until they had watched them perform the procedure. The record does not contain the recommendations of the defendants in regard to the Boulder dentists, but it does indicate that the defendants began performing equilibration treatment on the plaintiff two days after the above discussion.

Some time during the sixth session of the treatment procedure, which spanned almost three months, plaintiff became concerned with her progress and inquired of the defendants as to whether there were other dentists capable of performing occlusal equilibration. The defendants stated that this procedure was not performed by many dentists. The defendants stated that they could send the plaintiff to dentists in Aspen or Los Angeles, but that there would be no difference in the treatment received.

■ We conclude that a question of fact existed as to whether the defendants held themselves out as possessing special skills in the area of occlusal equilibration. Questions of fact are to be determined by the jury. *Converse v. Zinke,* 635 P.2d 882 (1981).

■ If there is a dispute, based on the evidence, as to whether the special skills or the general practitioner standard should be given, the judge should instruct the jury as to both with proper modification. *Colo.J.I.* 15:5 (2d ed. 1980) (Notes on Use).

Here, plaintiff adduced expert testimony establishing a specialty standard of care for dentists engaging in equilibration treatment. *See Short v. Downs,* 36 Colo.App. 109, 537 P.2d 754 (1975). Two of the plaintiff's expert witnesses stated that they had completed post-graduate courses and training in equilibration treatment. One of these experts had attended an institute in Florida which offered specialized post-graduate training in occlusal equilibration. Further, plaintiff was referred to a dentist, in Boulder, who limited his practice to equilibration and occlusal reconstruction. And finally, defendants' expert witness, a member of the American Equilibration Society and the Society for Occlusal Studies, was offered as having "subspecialties in the fields of prothodontics and equilibration."

■ Although plaintiff's proposed instruction did not accurately reflect the prevailing law, it sufficiently informed the trial court of plaintiff's position to trigger the trial court's duty to modify the draft instruction and to instruct the jury correctly on the applicable law. *See Stephens v. Koch,* 192 Colo. 531, 561 P.2d 333 (1977). The evidence warranted an instruction on the standard of care required of a practitioner with a sub-specialty or special training in equilibration treatment. The trial court's failure to so instruct the jury constitutes prejudicial error.

Contrary to the contentions of the defendants, plaintiff's pleadings are sufficiently specific as to give notice of the standard of care under which she seeks to prove a breach of duty. C.R.C.P. 8(a). *See Weick v. Rickenbaugh Cadillac Co.,* 134 Colo. 283, 303 P.2d 685 (1956).

Because we are reversing the judgment entered on behalf of defendant, we do not address the propriety of the costs assessed against plaintiff.

The judgment of the trial court is reversed and the cause is remanded for retrial in a manner consistent with this opinion.

STERNBERG, J., concurs.

BABCOCK, J., dissents.

BABCOCK, Judge, dissenting.

I respectfully dissent.

A general practitioner who holds himself out as, and undertakes the work of, a specialist will be required to use the care and skill of that specialty. *Simpson v. Davis,* 219 Kan. 584, 549 P.2d 950 (1976); *Gaston v. Hunter,* 121 Ariz. 33, 588 P.2d 326 (1978). In this case however, there is no evidence that occlusal equilibration is a dental specialty. There can be no standard of care attendant to that which is not shown to exist. Therefore, defendants cannot be held to any standard of care above that of a practitioner of general dentistry.

The duty of care of a medical specialist is correctly defined by Colo.J.I. 15:5 (2d ed. 1980), which, as applicable here, provides:

"A [dentist] who holds himself out to be a specialist *in a particular field of [dentistry]* must use his skill and knowledge as a specialist in a manner consistent with the *special degree of skill and knowledge ordinarily possessed by other specialists* who have devoted special study and attention to the same field of expertise, and in a manner consistent with the state of knowledge in the same field of expertise at the time of the [treatment]." (emphasis added)

*See Artist v. Butterweck,* 162 Colo. 365, 426 P.2d 559 (1967); *Brown v. Hughes,* 94 Colo. 295, 30 P.2d 259 (1934). The notes on use to this instruction provide:

"This instruction should be used rather than Instruction 15:1 when the defendant has held himself out as being *a specialist in an area commonly recognized as such in his profession. If there is a dispute* as to which standard is applicable *in light of the evidence in the case,* both instructions should be given, with the appropriate modifications being made if necessary to avoid confusion for the jury." (emphasis added)

If the plaintiff in a negligence action seeks to measure the defendant's conduct by the higher standard applicable to a spe-

cialist, this issue must first be framed by the pleadings. C.R.C.P. 8. Then, to recover the plaintiff must show by expert testimony: 1) that a field commonly recognized as a specialty by the profession exists; 2) that there is a recognized standard in that field pertaining to the conduct at issue; and 3) that defendant's conduct did not meet that standard. *See Bloskas v. Murray,* 646 P.2d 907 (Colo.1982); *Smith v. Curran,* 28 Colo.App. 358, 472 P.2d 769 (1970). And, it is axiomatic that before the trial court must give an instruction upon a party's theory of the case, there must be evidence admitted which supports that theory. *Maloney v. Jussel,* 125 Colo. 125, 241 P.2d 862 (1952).

Here, the plaintiff's complaint alleged that the defendants were negligent in the following particulars: 1) in failing to use "appropriate treatment for plaintiff's occlusal problem"; 2) in failing to use "due care in performing the equilibration work"; 3) in failing to "diagnose and treat other dental problems including those of a periodontic nature"; and 4) in failing to "warn and inform plaintiff of the consequences of their course of treatment." There was no allegation in the complaint that the defendants held themselves out as specialists, that a recognized specialty of occlusal equilibration existed, or that defendants' conduct failed to meet any recognized standard of care of such "specialty." The pretrial order further reflected that the theory of the plaintiff was that defendants' negligence arose out of their failure to diagnose and treat the plaintiff in accordance with the recognized standard of general dentistry in the locality in question.

The plaintiff presented three expert witnesses. The first was engaged in the practice of general dentistry in Boulder, Colorado. This doctor opined that the equilibration treatment given the plaintiff did not meet with "the standards and reasonable knowledge and skill and care possessed by dentists performing occlusal equilibration in this area." On cross-examination he reiterated his opinion that the defendants' conduct fell beneath the "standard of prac-

tice for dentists practicing generally in Colorado and in Boulder and in Greeley."

The plaintiff's second expert witness was a periodontist who was a "specialist in regards to the treatment of gum disease." As such, he testified that in the course of his practice he saw "general dentistry work" performed by a vast majority of the dentists in Boulder and Weld County. He expressed no opinion as to the standard of care required of the defendants in performing general dentistry of occlusal equilibration.

The plaintiff's third expert witness was a Boulder dentist who, in response to counsel's question regarding specialization, answered: "I am a general dentist. For the last eleven or twelve years I have spent a great deal of time in post-graduate study in equilibration and reconstructive dentistry." He testified that he offered equilibration services as part of his normal dental practice. He also testified that, although there were different schools of thought regarding occlusal equilibration, it was not recognized by the dental profession as a specialty and that he knew of no recognized standard applicable to the field. However, he testified that, in his opinion, the defendants' treatment of the plaintiff was not "consistent with the standards of reasonable knowledge, skill, and care possessed by dentists performing occlusal equilibrations in this area."

The defendant called one expert witness who was engaged in the practice of "general dentistry" but who limited his practice to "restorative dentistry and occlusion mainly." He testified that the dental profession did not recognize restorative dentistry and treatment of occlusions as specialties and that practice in these areas was not licensed or licensable as specialties by the dental profession. In his opinion, the defendants' treatment of the plaintiff "fell within the applicable standard of practice for dentists in Colorado."

Although the defendants' expert was offered as having "subspecialties in the fields of prothodontics and equilibration," such "characterization" of a witness under CRE 702 does not as a matter of fact or law establish the existence of a dental specialty or the existence of an extraordinary standard by which the conduct of those who render such treatment must be measured. The offering of a recognized medical specialist as a witness is just that and no more; given proper foundation, there is nothing that prevents a recognized specialist from testifying as to the standard of care of a general practitioner.

In short, this case was pled and tried as an ordinary dental malpractice case. There was no contention that defendants were to be held to the duty of a dental specialist until plaintiff tendered her instructions after the close of the evidence. Obviously there was no showing of defendants' deviation from a heightened standard of care because there was no evidence that occlusal equilibration was recognized by the dental profession as an area of specialty or expertise attended by a recognized standard of special skill and knowledge common to others in the field. *See Restatement (Second) of Torts* § 299A, comment (d). Therefore, plaintiff was not entitled to an instruction on a higher duty of care. *Maloney v. Jussel, supra.*

I agree that there may be a question of fact as to whether the defendants represented that they possessed special knowledge and skill in performing occlusal equilibration. Such representation may give rise to a claim for relief under a theory of "negligent misrepresentation." *Bloskas v. Murray, supra.* However, plaintiff did not elect to proceed upon this theory but rather proceeded upon a theory of ordinary negligence.

On appeal, the plaintiff contends that the trial court abused its discretion by awarding, as costs, expert witness fees for time spent in preparation for trial. Plaintiff argues that an award of costs for expert witness fees may be calculated only upon time actually spent by the expert while testifying at trial. The majority opinion does not elect to address this issue.

Section 13–33–102(4), C.R.S.1973, states that:

"Witnesses in courts of record called to testify only to an opinion founded on special study or experience in any branch of science or to make scientific or professional examinations and state the result thereof shall receive *additional compensation, to be fixed by the court, with reference to the value of the time employed and the degree of learning or skill required.*" (emphasis added)

Costs allowed under § 13–33–102(4), C.R.S.1973, are circumscribed by a rule of reason and are totally within the discretion of the trial court. *Leadville Water Co. v. Parkville Water District*, 164 Colo. 362, 436 P.2d 659 (1967).

I would construe the statute to permit the trial court, within its sound discretion, to award reasonable costs of expert witnesses for time incurred in preparation for, as well as attendance at, the trial of the case. I can discern no abuse of discretion in this case.

I would affirm the judgment of the trial court entered upon the jury's verdict and its award of costs.