Edna Jo JORDAN and Michael Jordan, Individually and as Parents and Next Friends of Joseph Jordan, a Minor, Plaintiffs–Appellants and Cross–Appellees,

v.

Phillip J. BOGNER, M.D., Defendant–Appellee and Cross–Appellant.

No. 89CA0860.

Colorado Court of Appeals,
Div. IV.

Aug. 15, 1991.

Rehearing Denied Sept. 12, 1991.

Certiorari Granted April 20, 1992.

Salmon, Godsman & Nicholson, P.C., John G. Salmon, P. Randolph Nicholson, Englewood, Peter Smith & Susan Young Law Offices, P.C., Peter M. Smith, Lakewood, for plaintiffs-appellants and cross-appellees.

Pryor, Carney and Johnson, P.C., Bruce A. Montoya, Irving G. Johnson, Elizabeth C. Moran, Englewood, for defendant-appellee and cross-appellant.

Opinion by Judge HUME.

Plaintiffs, Edna Jo and Michael Jordan, individually and on behalf of their minor son Joseph, appeal a judgment entered upon a jury verdict in favor of defendant, Phillip J. Bogner. Although defendant filed a notice of cross-appeal raising additional contentions of error, those contentions have neither been briefed nor argued, and the cross-appeal is deemed abandoned. We affirm the judgment.

Defendant, a board certified family practitioner, was the attending physician during Joseph's birth at St. Joseph Hospital in Del Norte, Colorado, on April 21, 1985. Complications developed during the mother's labor and delivery, and, as a result of oxygen deprivation, Joseph is disabled by cerebral palsy.

Plaintiffs sued the hospital and the defendant, asserting negligence and professional malpractice. The claims against the hospital were settled prior to trial, leaving only the professional negligence claims against defendant for resolution at trial.

The central issue presented at trial was whether defendant's delay and his ultimate decision to deliver Joseph vaginally, rather than by Caesarian section, constituted substandard professional care. The jury's verdict finding the defendant not negligent was accepted by the court, and plaintiffs' post-trial motions were subsequently denied.

I.

Plaintiffs first contend that the judgment must be reversed because the trial court erred in instructing the jury as to standards of care respectively applicable to both specialist and non-specialist physicians. We agree that the court should not have instructed the jury as to the non-specialist or locality standard, but conclude that such error does not warrant reversal.

A non-specialist physician, or other general practitioner of the healing arts, ordinarily must act consistently with the standards required of his profession in the community where he practices. *Larson v. Lindahl*, 167 Colo. 409, 450 P.2d 77 (1968); see *CJI–Civ.3d* 15:2 (1989). However, a physician who holds himself or herself out as a specialist in a particular field of medicine or as having special skill and knowledge not common to others in his or her profession, or who in fact possesses such skill or knowledge, is required to conform to a standard commensurate with that which a reasonable physician practicing such specialty or possessing such special skills would meet. See *Short v. Kinkade*, 685 P.2d 210 (Colo.App.1983); see *CJI–Civ.3d* 15:4 (1989).

In a medical malpractice case, the applicable standard of care must be established by testimony from physicians who are knowledgeable concerning the standard of care and treatment commonly practiced by physicians engaged in the defendant's specialty. *Greene v. Thomas*, 662 P.2d 491 (Colo.App.1982).

■ If the evidence is disputed or conflicting as to whether the defendant is in fact engaged in a specialty practice, the trial court must give both a "local standard" instruction patterned after *CJI–Civ.3d* 15:2 (1989) and a "specialty standard" instruction patterned after *CJI–Civ.3d* 15:4 (1989). *Gambrell v. Ravin*, 764 P.2d 362 (Colo.App.1988), *aff'd on other grounds*, 788 P.2d 817 (Colo.1990); *Short v. Kinkade, supra.*

■ Here, the evidence was undisputed that defendant was a board certified specialist in family practice, who held himself out as being engaged in and qualified to practice that nationally recognized specialty. In measuring defendant's conduct during Joseph's delivery, all of the expert witnesses testified as to the standard applicable to family practice specialists. Although there was significant disagreement among the experts as to whether defendant's conduct deviated from the standard, there was no dispute concerning whether defendant was engaged in a nationally recognized specialty practice that required him to possess and use special skill and knowledge commensurate with standards of that specialty.

Over plaintiffs' objections, the trial court gave two instructions that defined professional negligence according to the locality rule applicable to non-specialist physicians. The trial court reasoned that those instructions were necessary because, on this occasion, defendant was engaged in performing services commonly performed by obstetric specialists and the jury had heard testimony from expert witnesses engaged in those fields of specialization. We conclude that those facts do not support the giving of the non-specialist locality instructions.

Although the trial court properly admitted testimony from experts who specialized in obstetrics and neonatology as well as from family practice specialists, all of those experts were determined to be familiar with national standards applicable to specialists in the field of family practice as related to professional care during delivery of babies. *See Connelly v. Kortz*, 689 P.2d 728 (Colo.App.1984).

In defining the applicable standard and in applying that standard to defendant's performance of the professional service in question, each of those experts used the standard for family practitioners rather than that applicable to other specialties. None of the expert witnesses testified concerning a local standard that differed from the national standard for family practice specialists. Thus, there was no reason for the court to instruct on any standard other than that applicable to defendant's specialty, because no evidence of standards applicable to other specialties or of locally differing standards was before the jury.

■ We also disagree with the trial court's alternative rationale in support of the locality instruction; that the limited availability of personnel, equipment, and support staff at the Del Norte hospital warranted instructions as to the locality standard.

■ While it is true that a physician's ability to conform to the applicable standard of care may be affected by circumstances existing at the time and place of his performance, the existence of such circumstances does not alter the requirement that the physician conform to the professional standards of his specialty. Rather, a specialist's performance is measured by what a reasonable physician practicing that specialty would or would not do under the same or similar circumstances. *See CJI–Civ.3d* 15:5 (1989).

Thus, evidence concerning the availability of staff and support services at St. Joseph Hospital at the time in question was relevant to the issue of whether defendant's performance conformed to the standards of his specialty under such circumstances. However, the presentation of such evidence did not warrant the giving of an instruction as to the standard of care applicable to a non-specialist physician. Such attendant circumstances are addressed by other language in the pattern jury instructions recommended for both specialist and non-specialist malpractice cases. *See CJI–Civ.3d* 15:2 and 15:4 (1989).

Although we have determined that the court erred in instructing the jury concerning the local standard applicable to non-specialist physicians, we must also consider whether that error requires reversal of the judgment. We conclude that it does not.

■ In order to determine whether instructional error requires reversal, it is necessary to consider all of the instructions together to determine whether, in light of the evidence, they adequately and correctly informed the jury as to the law to be applied. *See Hotchkiss v. Preble*, 33 Colo. App. 431, 521 P.2d 1278 (1974).

■ Here, the court instructed the jury that it must decide the issues based upon the evidence admitted at trial and upon consideration of all of the instructions as a whole. The court did give an instruction defining the negligence for medical specialists that substantially conformed to the pattern recommended in *CJI–Civ.3d* 15:4 (1989). It also gave the following instruction concerning implied warranty of capacity and ability as follows:

"Unless he states or agrees otherwise, a physician employed to treat a person impliedly warrants that he has that reasonable degree of learning and skill ordinarily had by other physicians practicing in the same specialty under the same · or similar circumstances, and that he will use reasonable and ordinary care and diligence in the exercise of his skill and the application of his knowledge to accomplish the purpose for which he is employed, and that he will use his best judgment in the exercise of his skill in diagnosing the condition and in treating the patient...."

As noted above, all of the expert testimony recognized defendant as a specialist in the field of family practice and considered his performance in light of what a reasonably careful physician in that specialty would do under the same or similar circumstances. Since there was no evidence of any other standard that the jury could consider, and in light of the court's instruction that the jurors consider only the evidence presented during the trial, the jury could not rationally have been misled or confused by the erroneous instructions about the locality rule applicable to non-specialists. Hence, the giving of those instructions, albeit erroneous, was harmless under the circumstances here.

Plaintiffs also contend that the court erred in failing to give a carrying instruction to explain how the various standard of care instructions should be applied. We disagree.

Initially, we note that plaintiffs did not tender such an instruction to the court as required by C.R.C.P. 51. In addition, for the reasons stated above, a carrying instruction attempting to explain the interrelationship between specialist and non-specialist instructions was unnecessary under the circumstances appearing here.

## II.

■ Plaintiffs next contend that the court erred in denying their motion *in limine* to exclude certain evidence offered by defendant. We disagree.

In his opening statement, defendant's counsel indicated that evidence would show that a Caesarian delivery could not have been performed more quickly than a vaginal delivery because a necessary blood test had not been performed. Because they had not been advised of that theory of defense prior to trial, plaintiffs, claiming surprise, sought to exclude such evidence.

Contrary to plaintiffs' contention, the record reflects that the laboratory technician who performed the blood tests was listed as a lay witness in defendant's trial data certificate and as a "will call" witness in a subsequent disclosure list. His initials appeared upon hospital records concerning blood tests that had been provided to plaintiffs during pre-trial discovery, and he was named in a nurse's deposition testimony as the person who had done blood testing on the morning of Joseph's delivery.

Plaintiffs were aware of the lab technician's involvement in the pre-delivery activities on the morning of Joseph's birth. However, based upon ambiguous testimony they elicited from defendant during his deposition, plaintiffs assumed that the lab

technician was at the hospital and could have drawn the blood immediately upon defendant's request made at 8:40 a.m., rather than having to be called into the hospital with other emergency support personnel.

The trial court found that any "surprise" was the product of plaintiffs' preparation efforts rather than active concealment by defendant. Later, in denying plaintiffs' motion for new trial based upon their "surprise" in the admission of blood testing evidence, the court repeated that finding and also noted that plaintiffs were provided ample opportunity during the course of the three-week trial to ameliorate the prejudicial effect of any claimed surprise.

We agree with the trial court's assessment and its rulings.

### III.

Finally, plaintiffs contend that the trial court erred in denying their motion for change of venue made in advance of trial. We disagree.

The case had been commenced in Denver District Court and the parties later stipulated to change venue to Rio Grande County. Still later, plaintiffs moved for a second change of venue, claiming that they could not obtain a fair and impartial jury in defendant's "home town."

In denying the motion, the court found plaintiffs' had failed to show the existence of widespread local prejudice sufficient to preclude the availability of an impartial jury. However, the court expressly indicated that plaintiffs could renew the motion if selection of an impartial jury proved difficult or impossible at the time of trial.

Plaintiffs did not renew the motion during voir dire, and they have not provided any record indicating that an adequate venire was unavailable for the selection of impartial jurors.

A ruling on a motion for change of venue is discretionary with the trial court and will not be reversed on appeal in the absence of a clear showing of abuse thereof. *Weston v. Mincomp Corp.*, 698 P.2d

274 (Colo.App.1985). We find no such abuse of discretion on the record before us.

The judgment is affirmed.

METZGER and ROTHENBERG, JJ., concur.