Edna Jo JORDAN and Michael Jordan, individually and as parents and next friends of Joseph Jordan, a minor, Petitioners,

v.

Phillip J. BOGNER, M.D., Respondent.

No. 91SC584.

Supreme Court of Colorado,
En Banc.

Jan. 11, 1993.

Rehearing Denied Feb. 8, 1993.

Salmon, Godsman & Nicholson, P.C., John G. Salmon, R. Randolph Nicholson, Peter Smith & Susan Young Law Offices,

P.C., Peter Smith, Englewood, for petitioners.

Pryor, Carney & Johnson, P.C., Elizabeth C. Moran, Irving G. Johnson, Bruce A. Montoya, Englewood, for respondent.

Justice ERICKSON delivered the Opinion of the Court.

The court of appeals in *Jordan v. Bogner*, 829 P.2d 414 (Colo.App.1991), affirmed the judgment of the trial court in favor of the defendant doctor on a medical malpractice claim. The court of appeals concluded that although the trial court erroneously instructed the jury as to the locality or nonspecialist standard of care, the error was not reversible. We granted certiorari and now reverse the judgment of the court of appeals and return the case to the court of appeals with directions to remand for a new trial.

## I

At approximately 8:00 a.m. on April 21, 1985, Edna Jo Jordan, who was in labor, arrived at St. Joseph Hospital in Del Norte, Colorado. At 8:40 a.m., her treating physician, Dr. Phillip J. Bogner, arranged for a surgical team to come to the hospital in case delivery by caesarean section was necessary. Bogner, a board-certified family practice specialist, decided that he would deliver the baby vaginally, rather than by caesarean section.[1] Complications developed during labor and Jordan's son, Joseph, was born at 9:20 a.m. with significant brain damage and cerebral palsy.

Jordan and her husband, Michael, individually and on behalf of Joseph, sued Bogner asserting claims of negligence.[2] At trial, the central issue was whether Bogner's delay in delivering the baby and his ultimate decision to deliver the baby vaginally constituted negligence.

The trial judge gave the jury four instructions defining the standard of care owed by Bogner. Two of the instructions specified the standard of care applicable to a physician who is a specialist.[3] The trial judge also gave two instructions that defined the nonspecialist standard of care,

1. Unlike general practitioners who are not required to have residency training, a board-certified family practice specialist must have residency training in several areas and pass a national certification examination. The specialty of family practice encompasses obstetrics, pediatrics, internal medicine, orthopedics, gynecology, and emergency medicine.

Bogner's residency program in family practice included an obstetrical residency in 1978. Bogner was trained in obstetrical care, including emergency and caesarian-section deliveries. We agree with the court of appeals that the actions at issue in this case fall within the specialty of family practice.

2. The Jordans also sued St. Joseph Hospital, which settled prior to trial.

3. The jury instructions on the standard of care of a specialist provided as follows:

JURY INSTRUCTION NO. 24

Unless he states or agrees otherwise, a physician employed to treat a person impliedly warrants that he has that reasonable degree of learning and skill ordinarily had by other physicians practicing in the same specialty under the same or similar circumstances, and that he will use reasonable and ordinary care and diligence in the exercise of his skill and the application of his knowledge to accomplish the purpose for which he is employed, and that he will use his best judgment in the exercise of his skill in diagnosing the condition and in treating the patient. He does not warrant a cure and is not responsible for lack of success, unless that lack results from his failure to use ordinary care, or from his lack of ordinary skill. If he has ordinary skill and uses ordinary care in applying it, he is not responsible for mistakes of judgment.

JURY INSTRUCTION NO. 25

A physician who holds himself out as a specialist in a particular field of medicine is negligent if he does a professional act which a reasonably careful physician acting as such a specialist or possessing such special skill and knowledge would not do or he fails to do a professional act which a reasonably careful physician acting as such a specialist or possessing such special skill and knowledge would do under the same or similar circumstances.

A physician's conduct in this regard must be measured against what a physician having and using that knowledge, skill and care of physicians practicing in the same specialty or who hold themselves out as having the same special skill and knowledge at the same time would or would not do under the same or similar circumstances.

incorporating the locality rule.[4] The trial judge did not instruct the jury as to how it should apply the different standard of care instructions. The jury subsequently returned a verdict finding that Bogner was not negligent.

The court of appeals affirmed the judgment of the trial court, concluding that while the instructions as to the locality or nonspecialist standard of care were erroneous, the giving of the erroneous instructions did not warrant reversal. *Jordan,* 829 P.2d at 416. The court of appeals determined that "[s]ince there was no evidence of any [standard other than the family specialist standard] that the jury could consider, and in light of the court's instruction that the jurors consider only the evidence presented during the trial, the jury could not rationally have been misled or confused by the erroneous instructions about the locality rule applicable to nonspecialists." *Id.* at 418.

## II

We granted certiorari to review the conclusion of the court of appeals that the giving of both the specialist and the locality or nonspecialist physician standard of care instructions was harmless error. We hold that the giving of the erroneous standard of care instructions was reversible error and reverse the judgment of the court of appeals.

**4.** The jury instructions as to the locality or nonspecialist standard of care provided as follows:

> JURY INSTRUCTION NO. 22
> A physician is negligent when he does an act within his profession which a reasonably careful physician would not do or fails to do an act which a reasonably careful physician would do.
> A physician's conduct in this regard must be measured against what a physician having and using that knowledge, skill and care of physicians practicing in the same field of practice in the same or similar locality at the same time would or would not do under the same or similar circumstances.
> [JURY] INSTRUCTION NO. 23
> A physician is negligent if at the time he performs any treatment he does not have or he fails to use, under the same or similar circumstances, the reasonable degree of

## A

A nonspecialist physician must act consistently with the standards required of the medical profession in the community where he or she practices. *Larson v. Lindahl,* 167 Colo. 409, 411, 450 P.2d 77, 78 (1968). A nonspecialist physician's conduct is measured against other "physicians practicing in the same field of practice in the same or similar locality." *See CJI–Civ.3d* 15:2.[5]

On the other hand, a specialist physician's performance is not measured against other physicians in the same or similar locality. *See Aaheim v. Humberger,* 695 P.2d 824, 826 (Mont.1985) (finding that the locality rule bears no rational relationship to specialist standard of care); *Orcutt v. Miller,* 595 P.2d 1191, 1194 (Nev. 1979) (holding that a board-certified specialist should be held to national standards of the specialty rather than the locality rule). Instead, a physician who holds himself or herself out as a specialist in a particular field of medicine is measured against a standard commensurate with that of a reasonable physician practicing in that specialty. *Short v. Kinkade,* 685 P.2d 210, 211 (Colo.App.1983); *see also Restatement (Second) of Torts* § 299A cmt. d (1965); *Gittens v. Christian,* 600 F.Supp. 146, 148–49 (D.V.I.1985) (holding that a family practice specialist should be held to a higher

> knowledge, skill or training possessed by other physicians practicing in the same field of practice in the same or similar locality at the same time and causes the patient to incur injuries.

**5.** *Bruni v. Tatsumi,* 46 Ohio St.2d 127, 346 N.E.2d 673, 678 (1976) explained the origin of the locality rule:

> The basis for this rule was that a physician at that time in a small town lacked the opportunity to keep abreast of the advances in the medical profession and that he did not have the modern facilities to provide care and treatment for his patients. Under these circumstances it would be unfair to hold such a doctor to the same standard as doctors who have such opportunities and facilities in larger cities.

*See generally* Jon R. Waltz, *The Rise and Gradual Fall of the Locality Rule in Medical Malpractice Litigation,* 18 DePaul L.Rev. 408 (1969).

degree of care than a general practitioner), *aff'd*, 782 F.2d 1028 (3d Cir.1986).

▮ A physician's ability to conform to the specialist standard of care may be affected by the circumstances existing at the time and place of his or her performance. These circumstances do not alter the requirement that the specialist conform to the professional standards of the specialty and do not allow the specialist to be measured by the locality rule. Instead, a specialist is measured against a national standard and by what a reasonable physician certified in that specialty "would or would not do under the same or similar circumstances." *See CJI–Civ.3d* 15:4.[6]

▮ In this case, the evidence was undisputed that Bogner was board-certified in the nationally recognized specialty of family practice and held himself out as qualified to practice that specialty. At trial, both sides presented expert testimony from specialists in both family practice and obstetrics. The various experts testified as to the standard of care applicable to a family practice specialist.[7]

Based on the foregoing facts, the trial court should not have given a nonspecialist standard of care instruction. Nor should the trial court have given an instruction that encompassed the locality rule.[8] We agree with the court of appeals that the trial court erroneously instructed the jury as to the locality or nonspecialist standard of care. Having determined that the trial court erred in giving these instructions, we must decide whether that failure was reversible error.

## B

▮ A trial judge is obligated to correctly instruct the jury on the law applicable to the case. *Stephens v. Koch*, 192 Colo. 531, 533, 561 P.2d 333, 334 (1977). An appellate court should reverse the trial court if the jury instructions are irreconcilable because "it is not our province to speculate on whether the jury followed the correct instruction or the incorrect one." *Noel v. Jones*, 142 Colo. 318, 320, 350 P.2d 815, 816 (1960); *see also City of Denver v. Capelli*, 4 Colo. 25, 30 (1877) (reversing judgment because court could not determine whether jury was governed by instruction that correctly stated the law or by the erroneous instruction).

▮ In a medical malpractice action, if the evidence is disputed as to whether the physician is in fact a specialist, a trial court should give both a nonspecialist instruction and a specialist instruction with proper modification. *Gambrell v. Ravin*, 764 P.2d 362, 365 (Colo.App.1988), *aff'd on other grounds*, 788 P.2d 817 (Colo.1990); *Short v. Kinkade*, 685 P.2d 210, 212 (Colo.App. 1983). When the evidence is not in dispute, however, a trial court can commit reversible error by instructing the jury as to the two different standards of care because it is impossible to determine which instruc-

6. Bogner claims that a specialist in family practice should be held to the higher specialist standard of care only when practicing in areas within his or her own specialty. When a specialist is confronted with an emergency situation requiring care in areas outside the customary bounds of family practice, Bogner asserts that the specialist should be held to the standards of a "family practice specialist practicing as a nonspecialist in the outside specialty."

The jury was instructed to measure Bogner's conduct "against what a physician having and using that knowledge, skill and care of physicians practicing in the same specialty ... would or would not do *under the same or similar circumstances.*" (Emphasis added.) The language of instruction 25 specifically encompasses Bogner's proposed standard and allows a jury to compare Bogner's actions against what another board-certified family practice specialist would

have done in similar circumstances at St. Joseph Hospital.

7. Throughout the trial, testimony was also elicited regarding differences in rural versus urban hospitals. For example, one of the defendant's experts, Dr. Kristina Steinberg, testified as to the standards of care applicable to a board certified family practice specialist in the San Luis Valley.

8. The trial court's reasoning for incorporating the locality rule was to instruct "the jury that Dr. Bogner's care and treatment of Edna Jo Jordan and Joseph Jordan must be measured against what a physician having and using that knowledge, skill, and care of physicians practicing in the same or similar locality at the time would or would not do under the same or similar circumstances."

tion governed the jury in reaching its verdict.[9]

*Colorado & Southern Ry. Co. v. McGeorge,* 46 Colo. 15, 102 P. 747 (1909), recognized the problem of conflicting standard of care instructions. *McGeorge* reversed a verdict for a plaintiff based on conflicting instructions and stated:

> The foregoing instructions undertake to state the rule which governs the liability to, and duty of, the common carrier to its passenger for hire. No argument is needed to show that they are in hopeless and irreconcilable conflict. The first [instruction] clearly states a higher and stricter rule as to the degree of care and diligence required. Both cannot be right. If the first is, then there is no prejudicial error in giving the latter, as it states a rule more favorable to the defendant than it was entitled to have. In that case, upon whichever one the jury may have based its finding, the defendant has no ground of complaint as to these instructions. On the other hand, if the first of said instructions incorrectly states the law, then the case must be reversed, because of the conflict between it and the true rule; for it is impossible to determine upon the doctrine of which instruction the jury acted, or by which it was governed, in reaching its verdict.

*Id.* 46 Colo. at 17–18, 102 P. at 748.

We agree that there is no prejudicial error to the defendant in giving a instruction which states a rule more favorable than the defendant was entitled to have. *See id.* However, in a case like this, where the jury returns a defense verdict, there may be prejudicial error to the plaintiff. Both the instructions and the testimony suggest that there are two different standards of care for a physician who is a family practice specialist. One standard is measured by a national standard, and the other standard is measured against "physicians practicing in the same field of practice in the same or similar locality."

The reasoning of *McGeorge* applies equally to a case where the jury returns a defense verdict based on conflicting standard of care instructions. In such a case, it is not clear whether the jury reached its verdict based on the correct standard of care or on the erroneous lower standard of care that incorporated the locality rule. Because it is impossible to determine which instruction the jury followed, we reverse.

### III

We hold that the trial court committed reversible error in instructing the jury on the locality or nonspecialist standard of care based on the undisputed evidence in this case that Bogner was a specialist in family practice. Accordingly, we reverse the judgment of the court of appeals and return this case to the court of appeals with directions to remand for a new trial consistent with this opinion.

**9.** Our holding is consistent with the approach of other jurisdictions. *See, e.g., Aaheim v. Humberger,* 695 P.2d 824, 826 (Mont.1985) (finding that an instruction incorporating locality rule constituted reversible error); *Wall v. Stout,* 311 S.E.2d 571, 578 (N.C.1984) (holding that giving of a nonspecialist instruction was error); *Tirpak v. Weinberg,* 27 Ohio App.3d 46, 499 N.E.2d 397, 401 (1986) (finding that an instruction incorporating locality rule constituted reversible error).