TIRPAK ET AL., APPELLANTS, *v.* WEINBERG, APPELLEE.

(No. 49954 — Decided January 6, 1986.)

*Clark B. Weaver,* for appellants.
*Richard J. Giffels,* for appellee.

PATTON, J. This appeal arises as a result of the judgment entered by the Cuyahoga County Court of Common Pleas which found that appellee, Gerald Weinberg, had not committed medical malpractice. The facts giving rise to this appeal as contained in the record provide the following:

On July 20, 1978, appellants, Donna and Paul Tirpak, filed suit against the appellee, Gerald Weinberg, alleging medical malpractice. On December 29, 1981, the case was referred to medical arbitration. On December 20, 1982, the arbitrators issued their findings of fact and awarded appellants $27,500. On January 12, 1983, appellants filed their notice of nonacceptance of the award and an amended complaint.

On January 29, 1985, the case came to trial. Upon the conclusion of the trial, the jury found for the appellee. Appellants filed their timely notice of appeal.

On February 11, 1976, appellant Donna Tirpak gave birth to her second child. The delivering obstetrician was appellee Dr. Gerald Weinberg.

On that day, Mrs. Tirpak came to the offices of Dr. Weinberg for a routine, scheduled examination and discovered that she was in very early labor. She was immediately admitted to Marymount Hospital. Mrs. Tirpak's labor was further induced by a drug called Pitocin. As labor progressed, Mrs. Tirpak was given a local anesthetic and Dr. Weinberg performed a midline episiotomy to facilitate delivery of the child. The delivery was without complication or interruption. The child was a healthy, eight-pound baby boy.

After delivery, Dr. Weinberg stayed with Mrs. Tirpak for approximately one hour to repair the midline episiotomy and to monitor her blood pressure, pulse, and bleeding of the uterus. Mrs. Tirpak was discharged from the hospital a few days later without any reported complications. Hospital records show no complaint of bowel trouble.

On March 26, 1976, Mrs. Tirpak returned to the offices of Dr. Weinberg for the normal postpartum examination. On this date, she was examined by Dr. Abrams. Dr. Abrams testified at trial via videotape deposition. Dr. Abrams testified that he performed a complete vaginal and rectal examination. Mrs. Tirpak did *not* indicate to Dr. Abrams that she was having *any* problems or complications. Dr. Abrams testified that had Mrs. Tirpak made any complaint in reference to incontinence or difficulty with bowel control, he would have noted that in his records.

It was not until September 1, 1976, seven months after delivery, that Mrs. Tirpak first complained to Dr. Weinberg about complications with her bowels. Dr. Weinberg testified that he examined her, but could not make a determination. He gave her a prescription to clean up her vaginal area and instructed her to return in one week. Dr. Weinberg testified that he told Mrs. Tirpak that corrective surgery could be done; however, Mrs. Tirpak never returned to Dr. Weinberg the following week. The appellants' claim that she returned one year later is denied by Dr. Weinberg and his office records support the denial.

In August 1977, Mrs. Tirpak consulted Dr. Lopez. After examining Mrs. Tirpak, Dr. Lopez made certain recommendations, but apparently did not treat Mrs. Tirpak. Dr. Lopez referred Mrs. Tirpak to Dr. Jose Somera. Dr. Somera attempted to repair her sphincter muscle in September 1977.

In September 1978, Mrs. Tirpak consulted Dr. Victor Fazio of the Cleveland Clinic. Dr. Fazio suggested an operation which would give Mrs. Tirpak use of her sphincter muscles. Appellant has not had this operation to this date.

Appellant contends that the use of Pitocin during her delivery caused the fetus to "explode" out of her pelvis which resulted in her sphincter muscle being ruptured, torn or cut, and which was not repaired thereafter. As a result, appellant suffers from incontinence, *i.e.,* an inability to control her bowels.

Appellants' expert, Dr. George Maxwell, testified at trial via deposition that the appellant was improperly induced in that the Pitocin was continually increased causing a precipitous labor by driving the baby through the pelvis. Dr. Maxwell's expert opinion was that "the anal sphincter muscle was separated in total by extension of the episiotomy directly related to the precipitous delivery."

Appellee's expert, Dr. Stanley Post, testified that appellant's problems began after Dr. Somera's attempted repair. Dr. Post testified that appellant's symptoms suggested upper colon problems preceding the repair. The symptoms were not related to any local

episiotomy repair or problem around the entrance to her rectum. These opinions were based upon his actual examination of the appellant on June 7, 1982. In Dr. Post's opinion, there was no evidence for malpractice.

At the conclusion of the trial, the jury entered a finding for the appellee. On appeal, appellants assign two errors:

"I. The trial court erred in instructing the jury that the standard of ordinary care of a physician practicing a specialty is established by the standard of care in the medical community and thereby limited by geographical considerations.

"II. The trial court erred in its failure to include in its charge to the jury that the fact some other cause concurred with the negligence of a defendant in producing an injury does not relieve the defendant from liability unless it is shown such other cause would have produced the injury independently of defendant's negligence."

## I

In their first assignment of error, appellants contend that the trial court erred in instructing the jury that the standard of care of a physician practicing a specialty is established by the standard of care which is ordinarily employed by members of the same medical specialty in the community. This contention is well-taken.

In *Bruni* v. *Tatsumi* (1976), 46 Ohio St. 2d 127 [75 O.O.2d 184], the Ohio Supreme Court rejected the so-called locality rule of evidence in connection with expert medical testimony in a specialty. The court held in paragraph one of the syllabus as follows:

"In order to establish medical malpractice, it must be shown by a preponderance of evidence that the injury complained of was caused by the doing of some particular thing or things that a physician or surgeon of ordinary skill, care and diligence would not have done under like or similar conditions or circumstances, or by the failure or omission to do some particular thing or things that such a physician or surgeon would have done under like or similar conditions and circumstances, and that the injury complained of was the direct and proximate result of such doing or failing to do some one or more of such particular things."

The *Bruni* court clearly states in paragraph two of its syllabus that the present standard of care for a physician or surgeon in the practice of a board-certified medical or surgical specialty:

"* * * should be that of a reasonable specialist practicing medicine or surgery in that same specialty in the light of present day scientific knowledge in that specialty field; therefore *geographical considerations or circumstances control neither the standard of the specialist's care nor the competence of the testimony of an expert in that specialty.*" (Emphasis added.)

Before rejecting the application of the locality rule of evidence the court discussed the rule's origin and original useful purpose. The court cited to *Small* v. *Howard* (1880), 128 Mass. 131, 35 Am. Rep. 363, as the case which first expressed the rationale for the locality rule. The court in *Bruni* observed at 133:

"The basis for this rule was that a physician at that time in a small town lacked the opportunity to keep abreast of the advances in the medical profession and that he did not have the most modern facilities to provide care and treatment for his patients. Under these circumstances it would be unfair to hold such a doctor to the same standards of care as doctors who have such opportunities and facilities in larger cities."

However, the court continued at 134:

"* * * [I]n this modern era means of transportation facilitate opportunities for physicians and surgeons from small

communities to attend up-to-date medical seminars; the general circulation of medical journals makes new devolopments [*sic*] readily available to them and they can easily communicate with the most advanced medical centers in the country."

The court cited to a 1962 survey done by the editorial board of the Stanford Law Review which concluded that the practice of medicine by certified specialists within most medical specialties is similar throughout the country. The court concluded at 134:

"* * * [T]he locality rule has been increasingly eroded as being antiquated and unrealistic, expecially in the medical specialties field."

See *Shapiro* v. *Burkons* (1978), 62 Ohio App. 2d 73 [16 O.O.3d 175], wherein this court applied the first paragraph of *Bruni* as the general rule of law applicable in medical malpractice cases. See, also, *Alexander* v. *Mt. Carmel Medical Center* (1978), 56 Ohio St. 2d 155 [10 O.O.3d 332]; *Ault* v. *Hall* (1928), 119 Ohio St. 422; *Williams* v. *Grant* (1979), 65 Ohio App. 2d 225 [19 O.O.3d 168]; and *Morgan* v. *Sheppard* (1963), 91 Ohio Law Abs. 579.

In the case *sub judice,* the trial court instructed the jury as follows:

"So what is the law with relation to this situation? As concerns a medical doctor, in this case, Dr. Weinberg, he has a legal duty under the law to exercise the average degree of skill, care and diligence exercised by members of the same medical specialty *in the community in like and similar circumstances.* If he fails to perform that duty, he is negligent and has committed malpractice.

"The question is did he so [*sic*] some thing or things that an obstetrician of ordinary skill, care and diligence would not have done under like or similar conditions and circumstances at the time that this occurred.

"If he failed to so [*sic*] some thing or things that such an obstetrician would have done under like or similar conditions and circumstances, there, however, you must find that the plaintiff established malpractice by a preponderance of the evidence as explained." (Emphasis added.)

The trial court further instructed the jury as follows:

"I instruct you, furthermore, under the law, that in this state a physician, or in this case, an obstetrician, is not an insurer or guarantor of the result of his work. A physician, or in this case, an obstetrician, unless by express agreement, does not warrant that his care and treatment of a patient will be successful or undertakes [*sic*] that nothing will arise as a result thereof.

"Rather, it's the physician's duty to exercise the degree of care and skill which is ordinarily employed by members of the medical profession in the same line of practice *in this community — in this community* at the time that the attention is given by the physician to the patient." (Emphasis added.)

When counsel for the appellants objected to the charge on the required standard of care, the court overruled the objection and stated: "THE COURT: I gave the law as I pulled it out of OJI." However, the charge found in 3 Ohio Jury Instructions (1981) 184-185, Section 331.02(2), provides:

"2. SPECIALIST. A specialist is a (physician) (surgeon) who holds himself out as specially trained, skilled and qualified in a particular branch of (medicine) (surgery). The standard of care for a (physician) (surgeon) in the practice of a specialty is that of a reasonable specialist practicing (medicine) (surgery) in that same specialty, regardless of where he practices. A specialist in any one branch has the same standard of care as all other specialists in that branch. If you find by the greater weight of the evidence that defendant failed to use that standard of

care, then you may find that he was negligent."

The comment following the instruction acknowledges the *Bruni* decision as the basis for the instruction:

"COMMENT. The foregoing is drawn from *Bruni* v. *Tatsumi* (1976), 46 OS(2d) 127, 75 OO(2d) 184, 346 NE(2d) 673, paragraph 2 of the syllabus. *Note that geographical considerations or circumstances do not control the standard of care required of a specialist."* (Emphasis added.)

Appellee argues that the instructions were not erroneous and that in looking at the instructions in their entirety, the proper standard of care was conveyed to the jury. See *Mansfield Pub. Util. & Serv. Co.* v. *Grogg* (1921), 103 Ohio St. 301. This argument has no merit.

The court in the case *sub judice* instructed the jury to determine whether or not the appellee exercised the average degree of skill, care and diligence exercised by members of the same medical specialty in like and similar circumstances. However, the court limited that degree of care and skill to that which is found in *this community*. Indeed the court gave that limitation and then immediately repeated it for emphasis. Therefore, the proper standard of care was not conveyed to the jury.

In addition, appellee argues that even if the instructions were erroneous, they were not prejudicial. Appellee cites to *Eaton* v. *Askins* (1953), 95 Ohio App. 131 [53 O.O. 42], wherein the Franklin County Court of Appeals held in paragraph two of its syllabus:

"To justify a reversal of a judgment of a trial court, on the ground of a claimed erroneous charge to the jury, it is not sufficient to show that it was *possible* that the jury may have been misled thereby, but rather that the jury was *probably* misled in a matter materially affecting the complaining party's substantive rights." (Emphasis *sic.*)

This argument is also without merit. Appellants' expert was Dr. George Maxwell, an internationally known gynecologist and obstetrician, who is based in Maryland and was working at an American Hospital in Indonesia at the time of the trial. In contrast, appellee used Dr. Stanley Post, an obstetrician and gynecologist specialist who, like the appellee, is from the Greater Cleveland area. The jury was made aware of these distinctions in the community during the trial. Therefore, for the court to limit the determination of care only to "this community" clearly is reversible because the evidence is sufficient to show that the jury was "probably misled" in a matter which materially affected the appellants' substantive rights.

Accordingly, appellants' first assignment of error is well-taken.

II

In their second assignment of error, appellants contend that the court erred in instructing the jury on the issue of proximate causation. This contention is without merit.

Appellants argue that the court committed reversible error in failing to include in its charge to the jury on proximate cause that even if some other cause concurring with the negligence of a defendant in producing the injury occurs, the defendant is still not relieved from liability therefor. This argument has no merit.

In the case *sub judice,* the court gave the following instruction on proximate cause:

"However, before a plaintiff can recover, assuming that there is established by a preponderance of the evidence malpractice or negligence, it must also be proven by the plaintiff by a preponderance of the evidence that the injuries complained of were proximately caused by the negligence or malpractice of Dr. Weinberg. That is the negligence or malpractice of the defendant must

stand to the injury in direct relation of cause and effect.

"The negligence of a person is a proximal cause of an injury if it can be said that the injury would not have occurred without such negligence and if the injury resulted in a natural and continuous sequence which produced the injury and without which the result would not have occurred. Proximate cause is established if the injury complained of is the natural and probable result of a negligent act or omission."

The longstanding rule in Ohio is that the trial court is not bound to give "an instruction dealing in generalities and not linked to the parties and connected with the issues in the particular case." *Bradley* v. *Mansfield Rapid Transit* (1950), 154 Ohio St. 154 [42 O.O. 221], overruled on other grounds (1966), 6 Ohio St. 2d 192 [35 O.O. 2d 307], cited in *Walczesky* v. *Horvitz Co.* (1971), 26 Ohio St. 2d 146 [55 O.O. 2d 277]. In the case *sub judice,* the action is based upon the medical malpractice of appellee Dr. Weinberg. An inference may have been raised that a subsequent operation on Mrs. Tirpak performed by Dr. Somera may have been the probable cause for her injuries. However, appellants have failed to supply sufficient evidence to prove they were prejudiced.

In order to support a reversal of judgment, the error must be prejudicial. *Walczesky, supra.* See, also, *Smith* v. *Flesher* (1971), 12 Ohio St. 2d 107 [41 O.O. 2d 412]. In the case *sub judice,* appellants have the burden under Ohio law to establish more than just a mere *possibility* of prejudice. See *Eaton, supra.* The appellants have not reached this standard by merely claiming in their appellate brief that "the surgical procedure performed by Dr. Somera might, by some, be viewed as another cause * * *." Appellants have no proof of actual prejudice or that the jury was *probably* misled.

Accordingly, appellants' second assignment of error is without merit.

The judgment is reversed and the cause is remanded to the common pleas court for a new trial.

*Judgment reversed and cause remanded.*

PRYATEL, P.J., and KRUPANSKY, J., concur.