DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Following a jury verdict in his favor, judgment was entered for Dr. James Rosser ("Rosser") and against Penny Dean ("Dean") in her medical malpractice case against him.[1] The trial judge did not instruct the jury on Dean's medical battery claim against Rosser. During the trial, a directed verdict was entered in favor of Dr. Peter Boutsicaris ("Boutsicaris") on Dean's claims of malpractice and battery. Dean has appealed both the directed verdict in favor of Boutsicaris and the judgment in favor of Rosser.
Dean has assigned as error that the trial court (1) improperly directed a verdict in favor of Boutsicaris with respect to his medical malpractice claim; (2) improperly withheld the claims of technical battery against both physicians from the jury; and (3) transformed the objective standard of care into a subjective one by instructing the jury that the standard was that of a laparoscopic surgeon rather than a board certified general surgeon.[2] We overrule all three errors and affirm the judgment of the trial court.
 I
In August 1993, Boutsicaris performed an emergency surgery on Dean to remove a portion of her colon in which she had perforated diverticulitis.[3] Rather than reconnect the two loose ends of her colon together immediately, Boutsicaris pulled the top end through the abdominal wall to create a temporary colostomy.[4]
He sealed the severed end of the lower portion, creating an internal stump connected to her rectum.
In early January 1994, Boutsicaris recommended that Dean consider laparoscopic surgery[5] to reverse the colostomy and to reconnect her colon. He referred her to Rosser, who had performed several similar surgeries. Rosser is a board certified general surgeon and is a specialist in laparoscopic surgery. At the time of the operation, Rosser was the surgeon with the most experience in colorectal laparoscopic surgeries at Akron General Medical Center and he was to perform or supervise all laparoscopic colorectal surgeries at the hospital. After a consultation with Rosser, Dean agreed to proceed with the laparoscopic reconnection. During the consultation, Rosser explained that "if we ha[ve] difficulty to the point where no progress was being made that [she] would be opened and the operation carried out in the opened fashion."[6] At Dean's request Boutsicaris agreed to assist in the laparoscopic surgery, but more specifically to be available in case difficulties arose which required conversion to an open surgery.[7]
Prior to this elective surgery, Dean signed two consent forms, one the night before surgery and a second one on the day of surgery. The forms were identical in all relevant aspects. The forms describe the operation being requested as "laparoscopic takedown and colostomy reversal Hartman's Pouch — possible laparotomy." Rosser and Boutsicaris are both listed as physicians performing the operation. The forms contain an acknowledgment that "unforeseen conditions may be revealed that necessitate an extension of the original procedure or different procedures" and that "the practice of medicine is not an exact science [and] that it may involve the making of medical judgments based upon facts known to the physician at the time[.]" It authorizes the surgeons to perform "such surgery/procedures that are necessary in the exercise of their professional judgment." The space included for Dean to record any exceptions to the above authorization is blank on both forms, as is another section designated "Remarks." The forms also acknowledge that Dean has "had an opportunity to discuss with and have explained to my satisfaction * * * the operation * * * as well as reasonably foreseeable risks."
On January 12, 1994, Rosser and Boutsicaris operated on Dean. During the procedure, they discovered that the stump contained hard fecal matter. Attempts to bypass the hardened stool with the connecting stapler were unsuccessful, and during the process a small tear, approximately three millimeters, appeared in the wall of the stump. Rosser and Boutsicaris sutured the tear and evacuated the stump using a gravity driven stream of water.[8]
The process took approximately three hours, in part because a piece of equipment broke during the evacuation and had to be repaired before the surgery could be completed. During the process of cleaning out the stump Boutsicaris initiated a conversation with Rosser about whether or not they should revert to an open procedure. Based on Rosser's assessment of the situation, Rosser made the decision to continue laparoscopically. After the stump was cleaned out, the two ends were reconnected and surgery completed. The entire surgery, which was originally estimated to require approximately five hours, lasted ten hours.
Unfortunately, major life-threatening complications occurred following the surgery. A leak developed at the anastomosis[9]
that permitted fecal matter to leak into the abdominal cavity. All parties agree that the devastation that followed was caused by that leak. As a result of the massive infection that followed the leak, Dean was forced to undergo several additional surgeries to remove necrotic tissue, to repair fistulae[10] that had developed, and to create and reverse two additional colostomies. She spent approximately four months in the hospital, much of it in critical condition oblivious to her surroundings, her abdomen a massive open wound. Although physicians were eventually able to close her abdomen, the muscles in her abdominal wall were destroyed. At the time of the trial she faced additional surgery to create artificial protection for her internal organs.
Dr. Samuel Esterkyn, a board certified general surgeon, testified as an expert on behalf of Dean.[11] Currently the "main emphasis" of Esterkyn's California practice is laparoscopic surgery, although he does not do colorectal surgery laparoscopically. Esterkyn agreed that, from the record, it was clear that Rosser was the "head surgeon." He also testified that as an assistant surgeon Boutsicaris' responsibility was that of a "secondary player," although the extent of that responsibility might be somewhat greater in laparoscopic surgery than in an open operation.
At one point, when it was suggested that he did "not have an opinion on" Boutsicaris' care, he agreed. Later, he was asked if "from the time of that surgery until today, you have no criticisms of Dr. Boutsicaris in anything he did, correct?" He responded, "That is correct." He further agreed that nothing Boutsicaris did was "negligent or below the standard of care[.]"
Rosser presented the testimony of two experts. Dr. Moises Jacobs is a board certified general surgeon practicing in Florida. He has extensive experience in laparoscopic colorectal surgery, and has performed somewhere between ten and thirty laparoscopic takedowns of a Hartman pouches. Dr. Thomas Diehl practices in Zanesville. He is also a board certified general surgeon and has done laparoscopic surgery for approximately ten years. He performs both open and laparoscopic colorectal surgery.
 II A. Medical Malpractice Claim against Boutsicaris When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue.
Civ.R. 50(A)(4). It is "the duty of a trial court to withhold an essential issue from the jury when there is not sufficient evidence relating to that issue to permit reasonable minds to reach different conclusions on that issue." O'Day v. Webb (1972),29 Ohio St.2d 215, 220. Because a motion for a directed verdict presents a question of law, not a question of fact, on appeal we review the decision of the trial court using the same standard initially applied by the trial court. See Ruta v.Breckenridge-Remy Co. (1982), 69 Ohio St.2d 66, paragraph one of the syllabus. We review the evidence and affirm the directed verdict if there is insufficient evidence to permit a reasonable person to decide in favor of the non-moving party when viewed in the light most favorable to the non-moving party. Grau v.Kleinschmidti (1987), 31 Ohio St.3d 84, 89-90.
In order to establish her case of medical malpractice, the plaintiff must establish, by a preponderance of evidence, that the physician acted or failed to act in a manner that a physician or surgeon of ordinary skill, care and diligence would have under like or similar conditions or circumstances, and that such acts or failures to act were the direct and proximate cause of the injury complained of. Bruni v. Tatsumi (1976), 46 Ohio St.2d 127, paragraph one of the syllabus. The standard of care, and the breach thereof, must be established by expert testimony. See id.
at 131-132; Ramage v. Cent. Ohio Emergency Serv., Inc. (1992),64 Ohio St.3d 97, 102.
There is no support in the record for Dean's assertion that the trial judge specifically determined that Boutsicaris owed her no duty of care, because the verdict was a general one disposing of all claims against Boutsicaris. Although it is better practice to articulate the specific basis for the directed verdict, it is clear from the transcript that the basis for the directed verdict was the failure to present any expert testimony that Boutsicaris had breached the duty he owed to Dean.
Dean presented the testimony of one expert witness, Dr. Samuel Esterkyn.[12] Esterkyn was critical of the surgical team for undertaking the procedure laparoscopically, for proceeding at all when they found fecal matter in the stump, and for failing to move the anastomosis below the tear in the colon. When asked to evaluate the performance of Boutsicaris specifically, however, Esterkyn agreed that he had no criticisms of Boutsicaris' performance.
Because Dean did not present any expert testimony that would support a finding that Boutsicaris breached the standard of care for a physician acting in the capacity in which he was acting, the judge properly withheld the claim from the jury. Dean's first assignment of error is overruled.
 B. Battery Claims against Boutsicaris and Rosser
Whether a trial judge withholds an issue from the jury by directed verdict or by declining to instruct them on it, the review is essentially the same. See Feterle v. Huettner (1971),28 Ohio St.2d 54, 55-56. As noted above, the trial judge should direct a verdict on an issue if there is insufficient evidence to permit reasonable minds to reach different conclusions on that issue. With respect to refusing to instruct the jury on a particular issue, the Ohio Supreme Court has held that, "In reviewing a record to ascertain the presence of sufficient evidence to support the giving of a[n] * * * instruction, an appellate court should determine whether the record contains evidence from which reasonable minds might reach the conclusion sought by the instruction." Feterle, 28 Ohio St.2d at syllabus. Because the reviews are essentially identical, we review together whether it was proper for the trial judge to withhold the claims of technical battery against both Rosser and Boutsicaris from the jury.
Surgery performed without the proper consent constitutes technical battery. Lacey v. Laird (1956), 166 Ohio St. 12, paragraph one of the syllabus. Unconsented touching can arise either because no consent was given,[13] or because the consent given was limited and the procedures performed went beyond the boundaries of the consent that was given. If the unconsented touching is harmless or beneficial, only nominal damages are permitted. See id. at paragraphs one and two. If the plaintiff is actually injured, compensatory damages may be awarded. SeeBaird v. Kunzelman (Feb. 8, 1995), Montgomery App. No. 14606, unreported.
R.C. 2317.54 provides that a signed written consent is presumed to be valid and effective to the extent that it describes in general terms the procedures to be performed, what they are expected to accomplish, the risks involved, the persons authorized to perform the procedure, and an acknowledgment that all the patient's questions have been satisfactorily answered. The presumption can be overcome by establishing, by a preponderance of the evidence, that it was obtained in bad faith, or through fraudulent misrepresentation of material facts, or was written in a language not understood by the party giving consent. Id. Evidence, other than that designed to overcome the presumption of validity, is not admissible to modify or limit the consent. Id.
In directing a verdict on all claims against Boutsicaris, the trial judge necessarily directed a verdict on the claim of battery. He specifically refused to instruct the jury with respect to the battery claim against Rosser. Although neither the trial transcript nor the appellate brief is entirely clear, it appears that the assertion that Dean has made is that her consent to laparoscopic surgery was limited, rather than uninformed.[14] If it was limited, exceeding that limit was battery.
There was uncontradicted testimony, before the verdict was directed on the claims against Boutsicaris, that Dean had signed both consent forms. The consent forms were ultimately admitted into evidence. During discussions as to whether Rosser's jury should be instructed on the claim, Rosser specifically offered the consent form as a defense to battery. Because Dean consented in writing to the surgery, in order to raise a question of fact with respect to her consent she either needed to establish that the form did not meet the statutory requirements to be presumed valid and comprehensive or to present evidence sufficient to overcome the presumption.
Dean did not assert that the form she signed failed to meet the statutory requirements to be considered presumptively valid. Nonetheless, we review it briefly. The two separate consent forms that Dean signed include all of the information that is required in order to comply with R.C. 2317.54, with the possible exception of a general description of the risks involved. Dean authorized Rosser and Boutsicaris to perform surgery, either laparoscopically or open, to reverse her colostomy. The consent contained an acknowledgement that, because of unforeseen circumstances, it might be necessary to deviate from the precise procedures consented to. That same paragraph authorized such deviations and provided a place for Dean to list exceptions to her consent. Dean did not describe any exceptions to the authorization. Neither did she include any limitation in the remark section that was adjacent to a paragraph acknowledging that she understood that surgeons must use their best judgment in acting on facts known to the physician at the time.
A consent form that lacks a recitation of risks does not necessarily fail to meet the requirements of R.C. 2317.54, because it is possible for a medical procedure to carry no risks significant enough to require their inclusion on the consent form. Neither the statute nor case law provides clear guidance as to which risks must be included on the consent form. Expert testimony is generally required to establish that there were risks that should have been disclosed, but were not, in evaluating the similar question of whether consent was properly informed. Warev. Richey (1983), 14 Ohio App.3d 3, 7, disapproved on other grounds (1986), Kalain v. Smith, 25 Ohio St.3d 157, 159. Dean did not challenge the consent form based on its failure to recite any specific risks, nor did she provide testimony that risks that should have been disclosed were not. Because the form on its face complies with the statutory requirements, absent a specific challenge we treat this form as in compliance.[15]
Similarly, with respect to overcoming the statutory presumption of validity, Dean did not offer evidence that Rosser and Boutsicaris were acting in bad faith, or that they obtained her consent by fraudulent misrepresentation. Dean speaks English, the language in which the form was written.
Dean has not presented sufficient evidence that would permit reasonable minds to conclude that her written consent is not entitled to the statutory presumption of validity and effectiveness, nor has she offered sufficient evidence that would permit reasonable minds to overcome the presumption. No evidence was presented that Rosser and Boutsicaris performed surgery that went beyond what was authorized in the two consent forms signed by Dean. Because of this, no factual question remained on the issue of consent, and the judge properly withheld the battery claims against Rosser and Boutsicaris from the jury. Dean's second assignment of error is overruled.
Standard of Care
 A trial court is required to give jury instructions that are, when taken as a whole, sufficiently clear to allow a jury to apply the law to the facts and inform the jury adequately of the law. See Schade v. Carnegie Body Co. (1982), 70 Ohio St.2d 207, 210. The instruction to the jury should state clearly and concisely the issues of fact and principles of law governing the case. Pickering v. Cirell
(1955), 163 Ohio St. 1, 4 citing 39 Ohio Jurisprudence 893, Section 232.
The precise language of jury instructions is within the trial court's discretion. Youssef v. Parr, Inc. (1990), 69 Ohio App.3d 679,690. Absent an abuse of discretion in the overall composition of jury instructions, which include the substance of all appropriately requested instructions, this court will respect the sound judgment of the trial court. An abuse of discretion connotes "more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." State v. Adams (1980), 62 Ohio St.2d 151, 157. Upon review, an appeals court must consider the charge to the jury in its totality, and if the law is clear and fairly expressed, there is no abuse of discretion. See Yeager v. RiversideMethodist Hosp. (1985), 24 Ohio App.3d 54, 55.
The standard of care for a surgeon in the practice of a board-certified medical or surgical specialty is an objective standard and not a subjective standard. Here, Dean's concern seems to be both that the standard of care for a laparoscopic surgeon is itself subjective and that the instructions were geographically limiting.
1. Laparoscopic v. Board Certified General Surgeon
Generally, a specialist is expected to exercise more skill and possess more knowledge within his or her field than a general practitioner. See Beach v. Chollett (1928), 31 Ohio App. 8, 11. The standard of care for a physician or surgeon in the practice of a board certified medical or surgical specialty is that of a reasonable specialist practicing medicine or surgery in that same specialty in the light of present day scientific knowledge in that specialty field. Bruni, 46 Ohio St.2d at paragraph two of the syllabus.[16] Here, the judge instructed the jury that a specialist is:
 [A] physician who holds himself out as specially trained, skilled and qualified in a particular branch of medicine. The standard of care for a physician in the practice of a specialty * * * is that of a reasonable specialist practicing medicine in the same specialty, regardless of where this specialist practices.
He then described the surgery performed on Dean as "laparoscopic colorectal surgery" and informed the jury that it may find Rosser negligent if it found that he "failed to use the standard of care of other laparoscopic surgeons[.]" In two more instances, the judge suggested comparing Rosser's performance to that of other laparoscopic surgeons. Additionally, the court charged the jury to consider "whether the treatment used by the Defendant was reasonably careful in the [sic] accordance with the standard of care required of physicians in their field of practice." The language in the jury instructions closely parallels that of the Ohio Jury Instructions. See 3 Ohio Jury Instructions (1996), Section 331.02.
Dean has argued that by the use of the phrase "laparoscopic surgeon," the judge excluded the objective standard of care of a board certified general surgeon and substituted in its place the subjective standard of a "laparoscopic surgeon." Although it is not explicitly stated, Dean's contention appears to be that the instruction permitted the jury to apply a lesser standard of care to Rosser's performance than if they were to judge it against that of board certified general surgeons. This is not, strictly speaking, an objective/subjective distinction. Assuming,arguendo, that the board certified general surgery standard was the appropriate standard of care, we address the implications of instructing the jury using the standard of care owed by a laparoscopic surgeon.
Three expert witnesses testified during the trial. All three were board certified general surgeons, which was disclosed to the jury. In addition, all three, including Dean's witness, testified that they regularly perform laparoscopic surgery. Esterkyn, Dean's witness, testified that laparoscopic surgery was the "main emphasis" of his practice. None of the witnesses qualified his opinion as being offered, on some points, from his perspective as a board certified general surgeon and, on other points, from his perspective as a laparoscopic surgeon. Nor did any of them indicate that his testimony was given solely from one perspective or the other. In fact Esterkyn, Dean's witness, testified that the standard of care would be the same. That statement was not disputed by other witnesses or by the jury instructions given.
Although it may possible to hold oneself out as a surgical specialist without first being a board certified general surgeon, that is not the case here. All the experts who testified, as well as Rosser, were board certified general surgeons. As such, they were expected to exercise the skills and knowledge they possessed as specialists in this field. When they obtained additional expertise to perform laparoscopic surgery, that expertise brought with it the expectation that the skills and knowledge of both specialties would be exercised in the performance of a procedure that was within both specialties. See, generally, Alexander v.Mt. Carmel Med. Ctr. (1978), 56 Ohio St.2d 155, 158-161. Under the facts in this case no reasonable juror would have understood the phrase "laparoscopic surgeon" to mean that Rosser was permitted to perform surgery in a manner inconsistent with the standard of care owed by either a board certified general surgeon or a by a laparoscopic surgeon. Assuming Dean is correct, that the instruction should have referenced a board certified general surgeon, the overall impact of the instruction given was to impose identical or higher expectations on Rosser.
2. Geographic Limitations
With respect to the geographic limitations, the Supreme Court of Ohio has held that to impose geographical boundaries on the medical standard of care transforms an objective standard into a subjective one. Geographical boundaries "do not control either the standard of the specialist's care or the competence of the expert's testimony." Bruni, 46 Ohio St.2d at 134-135; see, also,Berdyck v. Shinde (1993), 66 Ohio St.3d 573, 579. If the instructions to the jury necessarily exclude the testimony of some witnesses by virtue of their practice in a particular geographical or physical location, then those instructions transform an objective standard into a subjective one. See, generally, Tirpakv. Weinberg (1986), 27 Ohio App.3d 46.
Dean has contended, in essence, that because of the limited number of laparoscopic surgeons at Akron General Medical Center the use of the phrase "laparoscopic surgeon" transformed the objective standard of care into a subjective one. Dean claims that based on the trial judge's instruction, the jury was led to the erroneous conclusion that Doctor Rosser, alone, was capable of judging his performance.
In Tirpak v. Weinberg, the judge instructed the jury that "it's the physician's duty to exercise the degree of care and skill which is ordinarily employed by members of the medical profession in the same line of practice in this community — inthis community at the time that the attention is given by the physician to the patient." (Emphasis added.) Id. at 49. The appellate court found it was likely that the jury was misled by the instruction, which explicitly limited the body of professional experience to that of members of the immediate health care community, particularly since it repeated the phrase "in this community" immediately thereafter for emphasis. Id. at 50. Because of this, it found that the proper standard of care had not been conveyed to the jury, and reversed the judgment of the trial court. Id.
Here, there was no such limitation. The jury instructions did not contain an explicit limitation that the expert practice locally, nor did it contain an implicit one. The instructions referred generally to "laparoscopic surgeons." There were three laparoscopic surgeons who testified, from three different parts of the country. Each surgeon performed a variety of laparoscopic and open surgeries. The phrase laparoscopic surgeon is broad enough to include each expert who testified, regardless of the kind of laparoscopic surgery that he most regularly performed or the geographic location of his practice. The jury was permitted to, and presumably did, consider each of their opinions in judging Rosser's performance. This case does not rise to the level ofTirpak.
In reviewing the jury instructions as a whole it is not apparent that the choice of this phrase was unreasonable, arbitrary, or unconscionable. The jury instructions were clear and fairly expressed and properly conveyed the standard of care for a physician in the practice of a medical specialty to the jury. There is no departure from substantial justice in using the phrase "a laparoscopic surgeon" instead of "a board certified general surgeon." This choice of words does not constitute an abuse of discretion.
Dean's third assignment of error is overruled.[17]
 III
The trial court did not err when it directed a verdict in favor of Boutsicaris on the claim of medical malpractice, because Dean did not bear her burden of providing expert testimony that Boutsicaris was negligent in any manner. The trial court also properly withheld the issue of battery from the jury, with respect to both Boutsicaris and Rosser, because Dean did not present sufficient evidence to overcome the presumption that her written consent authorized the surgery actually performed. Finally, as used in this case, the standard of care indicated by reference to "laparoscopic surgeon" includes the standard of care owed by a board certified general surgeon and was not explicitly or implicitly limited to practitioners in a particular geographic location. The trial judge did not abuse his discretion by referring to the former, rather than the latter.
Judgment affirmed.
 KK
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellants.
Exceptions.
WILLIAM R. BAIRD FOR THE COURT
[1] Dean and her husband, Gregory Dean, filed a complaint asserting medical malpractice and battery against the Akron General Medical Center ("AGMC"), Dr. Peter Boutsicaris, and Rosser. AGMC counterclaimed against the Deans for payment of fees. The Deans also amended their complaint to name Daniel Guyton, chief of surgery at AGMC, as a defendant. He was dismissed before the case came to trial. During the course of the trial, a settlement was announced with AGMC, and the claims against it and its counterclaims against the Deans were dismissed. In addition, during the trial Gregory Dean withdrew his claims, which had been based on loss of consortium.
[2] Dean has assigned four errors. The first two related to the directed verdict on the claims of medical negligence and technical battery in favor of Boutsicaris and the third related to the failure to instruct Rosser's jury on the issue of technical battery. The first and second assignments of error inaccurately summarized the action below. Dean has asserted that the trial court "direct[ed] a verdict in favor of the appellee, Dr. Boutsicaris, on the issue of whether he * * * owed a duty of care to * * * Dean," and that the trial court "directed [a] verdict on the issue of his failure to disclose to Penny Dean what his true surgical role would be." The directed verdict in favor of Boutsicaris disposed of both claims against him in their entirety, rather than issue by issue. Reading the assignments of error in a manner consistent with the judgment, and the arguments actually made, we understand these assignments of error to challenge the validity of the directed verdict in Boutsicaris' favor on the claims of medical negligence and technical battery. In addition, we have combined our review of the second and third assigned errors relating to the medical battery claims against Boutsicaris and Rosser, because the resolution of each depends on the same evidence and is subject to the same standard of review. Because of this, Dean's fourth assignment of error is renumbered her third assignment of error.
[3] Diverticulosis is a common condition in which the colon develops pouches. When the pouches become inflamed (diverticulitis) and rupture the condition is known as perforated diverticulitis.
[4] Surgically created exit through the abdominal wall for fecal matter.
[5] Surgery performed by inserting instruments and a video camera through small incisions. Surgeons manipulate their instruments by watching the camera view on a screen in the operating room.
[6] Dean recounts the same conversation as "if they ran into a problem that he would see that I was opened up and it would be done the other way."
[7] The same surgery done through a large incision in the abdomen.
[8] There was testimony that the operative report describes the evacuation before it describes the repair, however the testimony of the physicians involved was that the repair was done before the stump was cleaned.
[9] The site at which the two ends of the colon were reconnected.
[10] Pathways from the colon to the abdominal wall through which fecal matter passes.
[11] Dr. Jeffrey Milsom and Dr. Guyton also testified on Dean's behalf, but they were not qualified as experts, and their testimony was limited to their direct contact with Dean.
[12] Dean also presented testimony of Dr. Jeffrey Milsom and Dr. Daniel Guyton. The court specifically ruled that Milsom was not an expert. Objections to opinion testimony by Guyton, on the basis that he had not been qualified as an expert, were sustained.
[13] This includes circumstances in which actual consent was given, but is ineffective because it was uninformed.
[14] Both Dean's brief and the trial transcript mingle the concepts of informed consent and lack of consent. Battery may be premised upon either. Dean's assertions fit more nearly into a claim that she limited her consent to laparoscopic surgery to certain circumstances and that the surgeons proceeded even though those circumstances no longer existed, than they do into a claim that she consented to all that was done but would not have consented had the risks been properly explained to her.
[15] Our determination is specific to this case, in which the patient's written consent was asserted as a defense to battery, and was not challenged as being insufficient to be entitled to a presumption of validity. We do not decide, as a general matter, whether a form that does not either list risks or indicate that there are none that require disclosure is entitled to a presumption of validity and effectiveness.
[16] While Bruni ruled specifically on the standard of care required of a defendant who was a board-certified surgical specialist, it has also been applied in cases in which it is not clear that the specialty is one for which board certification is possible. See, e.g., Berdyck v. Shinde (1993), 66 Ohio St.3d 573, paragraph 3 of the syllabus and 579 (using Bruni to analogize the standard of care owed by a nurse to that owed by a physician);Littleton v. Good Samaritan Hosp. Health Ctr. (1988),39 Ohio St.3d 86, 93 (applying the Bruni standard to psychiatrists as a medical specialist, without explicitly premising its validity on board certification).
[17] As renumbered above. Supra note.
SLABY, J. CONCURS